WILLIAMS, Appellant, V. WILLIAMS, Respondent.

*No. 117. Argued October 28, 1969.—Decided November 25, 1969.*
(Also reported in 171 N. W. 2d 902.)

---

[1] *Mitchell v. Western Casualty & Surety Co., supra.*

652

654

For the appellant there was a brief by *Frank W. Auer* of Eau Claire, attorney, and *Ronald J. Carey* of Menomonie of counsel, and oral argument by *Mr. Auer*.

For the respondent there was a brief by *Ingolf E. Rasmus* and *B. James Colbert,* both of Chippewa Falls, and oral argument by *Mr. Colbert.*

WILKIE, J. Practically the only action of the trial court that is not disputed on this appeal is the court's finding that the wife is entitled to an absolute divorce because of the husband's cruel and inhuman treatment.

The several issues raised by this appeal, motion for review and cross-appeal are:

1. Was the property division decreed by the trial court within that court's discretion?

2. Was the alimony awarded under the circumstances of this case a proper exercise of the trial court's discretion?

3. Should the trial court have ordered that life and health insurance protection for the wife be provided by the husband?

4. Did the trial court abuse its discretion in ordering the husband to pay $5,000 toward the wife's attorney's fees of $8,500 and $1,428.04 costs?

It is well settled that the division of property in a divorce judgment " 'is peculiarly a matter resting in the discretion of the trial court, subject to such rules as have been established by this court for guidance in respect to the matter.' " [1] Similarly, the amount of alimony to be paid by a husband to his divorced wife is also a matter peculiarly within the discretion of the trial court. [2]

Since such matters are discretionary with the trial court, the trial determination must prevail unless clearly characterized by mistake or some manifest error or disregard of established guidelines, amounting to a clear want of judicial discretion or judgment. [3]

Each case must be decided on its own facts with the trial court, in exercising its discretion, considering such circumstances as length of marriage, amount of permanent alimony, separate estate of the wife, conduct of the parties, age, health, and ability of the parties to earn, and the manner in which the estate was accumulated. [4]

The general, though clearly not inflexible rule is that one third of the marital estate is a liberal allowance for the wife, subject to increase or decrease depending on the circumstances of the case. [5]

[1] *Werlein v. Werlein* (1965), 27 Wis. 2d 237, 241, 133 N. W. 2d 820. *See also Wagner v. Wagner* (1961), 14 Wis. 2d 23, 109 N. W. 2d 507; *Mentzel v. Mentzel* (1958), 4 Wis. 2d 584, 91 N. W. 2d 101; *Hoffman v. Hoffman* (1955), 270 Wis. 357, 71 N. W. 2d 401.

[2] *Horel v. Horel* (1952), 260 Wis. 336, 50 N. W. 2d 673; *Jackowick v. Jackowick* (1968), 39 Wis. 2d 249, 159 N. W. 2d 54.

[3] *See Newton v. Newton* (1911), 145 Wis. 261, 130 N. W. 105; *Polleck v. Polleck* (1959), 8 Wis. 2d 295, 99 N. W. 2d 98.

[4] *See Radandt v. Radandt* (1966), 30 Wis. 2d 108, 140 N. W. 2d 293; *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d 130.

[5] *Strandberg v. Strandberg* (1967), 33 Wis. 2d 204, 207, 147 N. W. 2d 349, citing *Gauger v. Gauger* (1914), 157 Wis. 630, 147

We now turn to the specific actions of the trial court that are appealed from here.

### 1. *Property Division.*

The trial court found that the net worth of the wife at the time of trial was $327,196.38 and that of the husband was $237,237.84. The wife now argues that the trial court abused its discretion by not awarding her any part of the marital estate. The husband, on the other hand, argues two alternative positions: (1) That the trial court actually awarded the wife approximately 22 percent of the marital estate which is an adequate division of property under the circumstances of this case, or in the alternative, (2) that the wife had only a separate estate of approximately $30,000, which she inherited from her parents, and any amount above this, which was credited to the wife's net worth, should instead have been considered as part of the total marital estate of which sum she would be entitled to one third. For example, assuming the combined total estate of the parties was $564,434, under this computation the wife would receive her separate estate of $30,000 and then one third of the remainder, or approximately $188,134. Thus the wife would receive as a total approximately $218,134.

To more fully understand the arguments on this issue and the action taken by the trial court, a review of some of the background facts is necessary.

The parties at the time they were married had little or no money. After about seven years of marriage they sold their home in Michigan and used the proceeds to invest with one Kenneth Fleming in the Chippewa Plastics Company. A few years later the wife inherited $30,420 from the estates of her parents. From this inheritance she used $17,000 to purchase Fleming's interest

N. W. 1075; *Radandt v. Radandt, supra,* footnote 4; *see also Antholt v. Antholt* (1959), 6 Wis. 2d 586, 95 N. W. 2d 224; *Schneider v. Schneider* (1961), 15 Wis. 2d 245, 112 N. W. 2d 584.

in the plastics company and Fleming's stock was transferred to her name. (The remainder of the inheritance was invested in jointly held real estate.) As a result of this transaction, the husband was able to control the management of the company. The company prospered under his leadership and in 1959 the plastics company merged with Rexall Drug Company. At the time of this merger, the wife held 10,416 shares in her name of the common stock of Chippewa Plastics, which she had obtained in the Fleming purchase, and 80 shares of preferred stock which she received as a director of the plastics company.

Also in 1959 the parties adopted an estate plan which did not contemplate joint ownership of property. Thus a division of the parties' assets was made at that time and the husband made a gift of his interest in the lake property to his wife. Thereafter, the parties' jointly held homestead was sold with the proceeds going to the construction of a home on the lake property. This home and lake property were held in the wife's name.

The trial court provided for a property division pursuant to sec. 247.26, Stats.[6] The aim of this statute is to provide for an equitable division of the property of the parties, not only the property of the husband but also such property of the wife as she shall have derived either mediately or immediately from the husband.[7]

---

[6] Sec. 247.26, Stats., provides in part: ". . . The court may also finally divide and distribute the estate, both real and personal, of the husband, and so much of the estate of the wife as has been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case . . . ."

[7] See *Frackelton v. Frackelton* (1899), 103 Wis. 673, 79 N. W. 750; *Gauger v. Gauger, supra,* footnote 5.

The trial court based its division of property on Exhibits No. 27 and No. 28, which it found to represent the net worth of the wife and the husband respectively.

Exhibit No. 27 provides:

*"Net Worth Statement of Marianna A. Williams as of July 2, 1968*

| PROPERTY | Cost | Net Market Value |
|---|---|---|
| 1. Lake Property, 260 feet of frontage, including House, Boathouse and Cottage | 100,000.00 | 60,800.00 |
| 2. Furnishings | | 5,000.00 |
| 3. Antiques | | None |
| 4. Furs | 1,200.00 | 200.00 |
| | 1,600.00 | 200.00 |
| 5. Horses | 1,050.00 | None |
| 6. Automobile | 2,500.00 | 1,500.00 |
| 7. Boat | 150.00 | ? |
| Chris-Craft | 4,000.00 | ? |
| 8. Misc. | None | None |
| | | |
| Total Non-Productive Assets | | 67,700.00 |
| 9. 2,928 shares Rexall @ 34¾ | | 101,748.00 |
| 10. 42 shares Northern States Power @ 30 | | 1,260.00 |
| 11. 1,650 shares Standard Oil of Ind. @ 52¾ | | 87,037.50 |
| 12. 100 shares Sunstrand @ 87¾ | | 8,775.00 |
| 13. 100 shares American Motors @ 13¼ | | 1,325.00 |
| 14. House on Stanley Street | | 15,000.00 |
| 15. Note of Don Williams | | 10,000.00 |
| 16. Trust Corpus, First Wis. National Bank | | 37,750.88 |
| 17. Certificate of Deposit—First Wis. National Bank | | 2,000.00 |
| 18. Savings account—Northwestern State Bank, C. F. | | 600.00 |
| | | |
| Total Productive Assets | | 265,496.38 |
| Total Assets | | 333,196.38 |
| Liabilities, Bank Loan | | 6,000.00 |
| | | |
| Total Net Assets | | 327,196.38" |

Exhibit No. 28 provides:

*"Net Worth Statement of Donald R. Williams as of June 26, 1968*

| | Book Value | Actual Value |
|---|---|---|
| 1. Apartment Furniture | | 700.00 |
| 2. Bank Account | | 3,000.00 |

| | | |
|---|---|---|
| 3. 20 shares Apache Corporation @ 33½ | | 670.00 |
| *4. 2,112 shares Standard Oil of Indiana @ 52½ | | 110,880.00 |
| **5. Trust Corpus, First Wisconsin Trust Co. | | 43,972.87 |
| 6. Farm and Stable | | 10,000.00 |
| 7. Life insurance, cash value approximately | | 11,000.00 |
| | | 180,222.87 |
| 8. Chippewa Springs | 49,938.52 | None |
| | | [49,938.52] |
| 9. Chippewa Aviation, Book as of 6/26/68 | 46,076.45 | 35,000.00 |
| | | [46,076.45] |
| Total Assets | | 215,222.87 |

Note: Automobile is included in Chippewa Springs Assets.

Liabilities:

| | |
|---|---|
| 1. Current bills | 1,000.00 |
| 2. Chippewa Aviation note to Northwestern National Bank of St. Paul | 28,000.00 |
| 3. Note payable to Marianna Williams | 10,000.00 |
| 4. Investment credit liability in event of sale | 4,100.00 |
| 5. Estimated tax liability | 2,500.00 |
| Total Liabilities | 45,600.00 |
| Net Worth | 169,622.87 |
| Total Liabilities and Net Worth | 215,222.87 |

* 1,000 shares of Standard Oil of Indiana stock is pledged to the Northwestern State Bank of Chippewa Falls to secure note for moneys borrowed for Chippewa Springs operation.

**This trust includes 600 shares of Rexall stock @ $36.00 per share and represents $21,600.00 of the total value. The cost basis of this stock is about $3.75 per share. Transfer would result in capital gain of $32.25 per share."

The trial court specifically found in its finding of fact No. 32 that the wife's separate estate was $255,496.38 which was not subject to division. This total consists of all of her productive assets (items 9 through 18, except item 15) as listed in the above Exhibit No. 27. Item 15 is a note from the defendant which the court concluded was a gift and hence not a collectible asset of her

estate. This one item accounts for the difference between the total productive assets shown on Exhibit No. 27 as $265,496.38 and the amount represented by the items included in finding No. 32, totaling $255,496.38.

The husband attacks finding No. 32 and argues that the wife's separate estate cannot total this much. He argues that the wife received a $30,000 inheritance of which sum she used $17,000 to buy stock in the Chippewa Plastics, Inc. This $17,000 did not add new capital to the plastics company but merely bought the stock from Fleming. The husband further argues that since the success of the plastics company was due to his efforts, the appreciation of the wife's stock was a direct result of his skill and effort in the management of the company. Thus, while the wife may have a $30,000 separate estate, the appreciation of that estate was derived from him. So according to the husband, the wife has a separate estate of only $30,000 and the rest of the wife's estate was derived from him and so should be placed in the pot and then divided.

In *Martin v. Martin*,[8] this court recognized the fundamental fairness of this approach, saying:

"The theory of our divorce statutes is to provide for an equitable division of the property of the parties, not only the property of the husband, but such property of the wife as she shall have derived either 'mediately or immediately' from the husband. . . .

"The fact that the advances made by the husband in money and labor, and which largely added to the value of the wife's separate estate, became her separate property does not save it from the operation of the statute. The aim of the statute is to secure an equitable division of property, and in accomplishing this purpose the estate of the wife derived from the husband is subject to division as well as the property of the husband. . . . The statute is broad and covers property of every kind and description. It is not confined to specific property, the title to which has been transferred to the wife, but covers all

[8] (1918), 167 Wis. 255, 167 N. W. 304.

estate 'derived' from the husband. Money and labor put into the wife's property which greatly enhanced the value of her estate manifestly constitutes, within the designation of the statutes, 'estate derived from the husband.' " (Citations omitted.) [9]

However, to attribute the vast increase in the value of the wife's investments here to the efforts of the husband alone would be manifestly improper. While the skillfulness of the management is undoubtedly an important factor contributing to the success of a venture, it is not the only determinative factor. Such things as the state of the business economy, the type of product produced, and the availability of markets must also be considered when ascertaining why a given company has been successful. Thus, while the skill of the husband in managing the plastics company cannot be minimized, it was not the only element contributing to the company's success.

Moreover, to limit the wife's separate estate to her original $30,000 inheritance would be unfair to her for it would ignore economic realities. If she had invested her $30,000 in some other corporation in all probability she would have enjoyed some increase in the principal.

Furthermore, the record reveals that the trial court was aware of the unique situation of this case. In its decision and in finding of fact No. 31, the trial court expressly recognized that while her assets did not strictly fall into the category of property derived through her husband neither did they strictly fall into the category of separate property. The trial court's decision on this point is entirely equitable. There was clearly no abuse of discretion by the trial court in reaching its conclusions on this phase of the divorce action.

In appealing this portion of the judgment, the wife argues that the trial court gave her none of the marital property nor any of her husband's property. In essence, she argues that all of the property listed in Exhibit No.

---

[9] *Id.* at pages 263, 264.

27, including the nonproductive assets such as the lake property, furnishings, furs, etc. (items 1 through 8) totaling $67,700, was part of her separate estate and not subject to division under sec. 247.26, Stats.

The husband counters this argument with his alternative position, *i.e.*, that these items were subject to division under sec. 247.26, Stats., and that the trial court, by granting her these items totaling $67,700, actually awarded her approximately 22 percent of the marital estate. This argument has merit and this was implicitly recognized by the trial court when it found that her separate estate which was not subject to division consisted only of the productive items listed in Exhibit No. 27 (items 9–18, except item 15; finding of fact No. 32). Items one through eight clearly were derived from the joint efforts of both parties.

As pointed out above, the wife is not guaranteed that she will receive at least one third of her husband's estate, but rather that one third may be the starting point with the award being increased or decreased according to the special circumstances of the case. [10]

We are satisfied that in the instant case there was no abuse of discretion by the trial court in awarding the wife less than one third of her husband's estate where she has a larger estate than he and where his efforts contributed significantly to the increase of her separate estate during the marriage.

On this appeal, the wife also raises an issue as to the $10,000 note of the husband payable to the wife. The wife listed this as an asset on her net worth statement and the husband listed it as a liability. The testimony indicates that the note was made at a time when the marriage was not in difficulty and that the wife at the time considered the matter simply a family transaction.

---

[10] *See Antholt v. Antholt, supra,* footnote 5, and accompanying text.

The wife made no attempt to collect the note and even offered at one time to tear it up but the husband wanted her to keep it so that, in the event of his death, it could be deducted from his estate for death tax purposes.

The trial court concluded that this note was in the nature of a gift to the husband and equitably ought not to be an asset of the wife. Thus, this note was part of the marital estate subject to division. In addition, the trial court in its finding of fact No. 35 found that this note should be awarded to the husband. This finding is not against the great weight and clear preponderance of the evidence.

In his motion to review, the husband raises the issue of whether the trial court correctly determined the value of the businesses he owns to be $49,938.52 for Chippewa Springs and $46,076.45 for Chippewa Aviation. The husband's net worth statement reflects that the above values are the "book values" of the businesses for tax purposes but that the actual value of Chippewa Springs is zero and of Chippewa Aviation, $35,000. Thus the defendant argues that his actual net worth is only $169,622.-87 (plus the $10,000 note discussed above which would make his net worth $179,622.87). If the husband's net worth is actually only $179,622.87, then the wife, by receiving $67,700, would receive 38 percent of the estate subject to division.

The only testimony provided at trial as to the actual value of these businesses came from the defendant himself, although defendant's accountant did testify that these businesses had continually operated at a loss. In *Werlein v. Werlein,*[11] this court said that it was not an abuse of discretion for the trial court not to have agreed with the valuation the defendant in that case made of his property. In the instant case, the record reveals that the

---

[11] *Supra,* footnote 1.

trial court considered the values placed on the businesses by the husband and rejected them as self-serving.

2. *Alimony.*

The husband earns approximately $30,000 per year at the present time. (Finding No. 39.) The wife has an income of about $5,000 per year from her productive assets. Both Williams and his wife have been accustomed to a standard of living requiring expenditures of approximately $10,500 per year for each.

The trial court, finding that the impact of taxes on the husband's income made it impossible for him to provide the $10,500 per year each would need to live in accordance with past standards out of his present income (Findings Nos. 39–43), awarded the sum of $500 per month as alimony to the wife. The wife now objects to this amount as being not enough and the husband asks for a review of this award claiming that it is too much and that under the circumstances he should not be required to pay any alimony.

It is well established that "upon termination of the marriage relationship, a husband has a continuing obligation to support his wife at the social and economic status to which she has become accustomed during the marriage."[12] It is also equally well established that "both alimony payments and division of the estate are means whereby a husband meets the obligation to support his wife in the status to which she was accustomed."[13]

In the instant case, the husband is the "guilty party" but the wife has a large independent estate of her own. It requires approximately $875 per month to support the wife in the manner to which she has become accustomed. The husband is now required to pay $500 per month for her support, the remaining $375 the trial court presumably reasoned should come out of the wife's in-

[12] *Tonjes v. Tonjes* (1964), 24 Wis. 2d 120, 125, 128 N. W. 2d 446, and cases cited therein.
[13] *Id.*

dependent dividend income of $450 per month. At this level the wife would not have to invade the corpus of her separate estate.

In *Tonjes v. Tonjes,* this court said it was proper for the trial court in its discretion to conclude that the wife could apply her independent income to her monthly living expenses.

". . . To hold otherwise would be to eliminate the separate estate of the wife variable from consideration in assessing the obligation to continue support." [14]

The trial court acted properly within its discretion in awarding the wife only $500 per month alimony.

The wife here also objects to the fact that the trial court did not award her temporary alimony during the pendency of this action. The wife requested the family court commissioner of Chippewa county to order temporary support pursuant to sec. 247.23, Stats. This request was denied. It appears from the record that this request was renewed at the trial court stage. However, provisions for temporary alimony are discretionary, and under the circumstances of this case, the trial court's failure to so provide cannot be deemed an abuse of discretion.

The wife argues that it was an abuse of discretion for the trial court not to consider the tax consequences involved in the award of alimony. In the instant case, the testimony reveals that the husband customarily paid all the taxes of the parties.

In *Wetzel v. Wetzel,*[15] this court said:

"We think in making a division of property or in granting alimony or both that consideration should be given to the tax consequences. Disregarding the effect of taxes may result in an unrealistic and unjust result. We do not hold the trial court must adopt as a solution a method which produces the least amount of tax for the husband

[14] *Id.* at page 126. *See also Kronforst v. Kronforst* (1963), 21 Wis. 2d 54, 123 N. W. 2d 528.

[15] (1967), 35 Wis. 2d 103, 150 N. W. 2d 482.

or for the wife, but in arriving at a determination of the business side of the divorce the tax impact is a consideration which permeates the whole process ; . . . Whether the husband pays the tax or the wife pays the tax or whether it is shared in some manner is not the test. One may be allocated a larger share of the assets because the tax impact falls on him or less because the share is tax free. Likewise, the amount of alimony should be determined in reference to the fact it is deductible by the husband and taxable to the wife. How the arrangement or division works out in reality after taxes is a test of fairness." (Citations omitted.) [16]

In the instant case, the decision does not specifically indicate that the trial court considered the tax consequences of the alimony award, but it is reasonable to conclude that the trial court must have considered the usual tax consequences in making the award. It is unnecessary for the trial court to enter a specific finding showing he has considered the tax consequences in making an alimony award.

3. *Insurance.*

The wife asserts that the trial court abused its discretion by failing to order the husband to maintain life and health insurance protection for her as he did during the period of the existence of the marriage. The wife argues that the husband is required to maintain the wife in the manner to which she has become accustomed and in regard to insurance protection this means that the husband should be required to maintain the insurance protection he provided prior to the divorce.

The husband argues that given the respective sizes of the parties' estates, it was not an abuse of discretion for the trial court not to order him to maintain the existing insurance protection,[17] and that it would be a minimal outlay for the wife to provide her own insurance.

---

[16] *Id.* at page 110. *See also Wahl v. Wahl* (1968), 39 Wis. 2d 510, 159 N. W. 2d 651.

[17] The record reveals that the husband carried $59,000 worth of life insurance prior to the divorce.

We conclude that although the trial court here had the power to provide for the insurance policies, it did not do so, and considering the division of property and the alimony award, there was no abuse of discretion in failing to enter a specific order on these insurance policies.

4. *Attorney's Fees.*

The husband had filed a cross appeal on that portion of the trial court's judgment requiring him to pay attorney's fees in the sum of $4,000 together with costs in the amount of $1,000.

The matter of allowance of attorney's fees is within the discretion of the trial court and unless the court abused its discretion, its determination will not be upset on appeal.[18]

This case involved a substantial amount of property and required a great deal of preparation. The divorce itself was contested. The wife's attorney submitted a bill for fees of $8,500 plus disbursements of $1,428.04. The trial court adhering to the rule set forth in *Spheeris v. Spheeris,*[19] did not require the husband to pay the entire amount of the wife's attorney's fees. In view of the circumstances of this case, this was not an abuse of discretion.

*By the Court.*—Judgment affirmed. Two-thirds costs to respondent.

---

[18] *Wahl v. Wahl, supra,* footnote 16; *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 138 N. W. 2d 185.

[19] *Supra,* footnote 4.