LEEDER, Respondent, v. LEEDER, Appellant.

*No. 180. Argued March 4, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 262.)

For the appellant there was a brief by *Prazak & Geffs* of Clinton, and oral argument by *Jacob Geffs*.

For the respondent there was a brief by *Campbell, Brennan, Steil & Ryan* and *Thomas J. Basting*, all of Janesville, and oral argument by *Mr. Basting*.

HANLEY, J. Although the appellant has appealed from the entire judgment, the only issue argued before this court concerns the propriety of the property division, alimony and attorney's fees.

### *Property division.*

As to the property division, it is the appellant's contention that the trial court overvalued the total estate, thereby awarding an excessive amount to the respondent.

The family assets and liabilities are as follows:

| | | |
|---|---|---|
| Assets: | 218 acres "home" farm @ $450 | $ 98,110 |
| | 97-acre Dunker farm | 37,500 |
| | Livestock | 24,000 |
| | Corn, oats, hay, straw | 19,000 |
| | Machinery and equipment | 27,000 |
| | P. C. A. stock | 2,335 |

|  |  |
|---|---|
| Union Co-op (value not established) | |
| Automobile (each has his own of comparable value) | |
| Furniture & Household Goods (Provision hereinafter made) | ——— |
| | $207,945 |
| *Liabilities*: | 162,880 |
| *Net Worth*: | $ 45,065 |

The court awarded 40 percent of the net worth ($18,026) to be paid to the respondent in eight annual installments.

The "home" farm consists of approximately 200 acres purchased from a Mr. and Mrs. Leonard R. Finn on March 1, 1961, and 18 acres purchased from Mr. and Mrs. Archie Denolf on July 11, 1966. The Finn property was composed of two parcels, one of which was approximately 120 acres, the other measuring 80 acres.

At the trial four witnesses testified as to the value of the "home" farm. Mr. Elmer Braun, a real estate broker who appeared on behalf of the appellant, appraised the 120-acre tract at $60,000; the 80-acre tract at $16,800 and the 18-acre tract at $5,400, making a total value of the "home" farm $82,200.

Appearing for the respondent were Messrs. James Skelly, Charles Hyne, and Leonard Finn. Mr. Skelly, a farmer and real estate broker, testified that the 218 acres were worth $109,000, while Mr. Hyne, who was also a real estate broker, appraised the 120-acre tract at $60,000 and the 80-acre tract at $24,000. He did not render an appraisal of the 18-acre Denolf tract. Finally, Mr. Finn, who had previous appraisal experience and was the former record titleholder of the "home" farm,

testified that the value of the entire "home" farm of 218 acres had a fair market value of $450 an acre.

The 97-acre tract valued by the trial court at $37,500 was purchased on a land contract from a Mrs. Edith Dunker on March 1, 1960, for $31,248. The court's appraisal was somewhat higher than that of Messrs. Braun, Skelly and Hyne. Their appraisals were $28,000, $29,000 and $28,000, respectively. However, the trial court had before it the 1968 income tax returns of the appellant. The depreciation schedule on the exhibit showed improvements to the tenant house on the "Dunker" farm totaling $10,920, the bulk of which were made as late as 1967. There was also testimony that land values have increased since appellant purchased this land.

In an effort to establish the trial court's overvaluation, the appellant attacks the competency and credibility of the respondent's appraisers and calls this court's attention to the fact that Mr. Skelly had no specialized training as an appraiser and had not considered the fact that the 80-acre tract had not been tiled. Appellant also points out that Mr. Skelly had not sold any nearby real estate in the last three years. There was a conflict in the testimony as to whether the 80-acre tract had been tiled. The former owner, Leonard Finn, testified that it was tiled.

Although the appellant's position is that the trial court's valuation of the realty is unsupported by credible evidence, it has long been the rule of this court that the division of property is within the discretion of the trial court and will not be upset unless shown to be an abuse of such discretion. *Williams v. Williams* (1969), 44 Wis. 2d 651, 171 N. W. 2d 902. An abuse of discretion arises when the trial court has made a mistake or error with respect to the facts upon which the division was made or when the division itself was, under the circumstances of the case, either excessive or inadequate. *Lindahl v.*

*Lindahl* (1963), 19 Wis. 2d 379, 390, 120 N. W. 2d 142, 121 N. W. 2d 286.

In the instant case, the trial court's decision indicated it gave little credence to Mr. Braun's testimony due to the circumstances surrounding his decision to make the appraisal. He had originally agreed to render an appraisal for the respondent but after much delay informed her that he preferred not to get involved. A short time later he agreed to make an appraisal for the appellant. The trial court also noted that, despite his testimony that land values were increasing, his appraisal was considerably lower than the property's original cost, plus the improvements shown on the appellant's 1968 tax return.

Under such circumstances, we think the trial court was justified in refusing to accept Braun's appraisal. We find the trial court's value of the real estate is not against the great weight and clear preponderance of the evidence.

In reference to the personal property of the parties, the trial court's decision stated:

"The court is left with somewhat unusually limited proof of values from direct testimony, and must arrive at its figures from a composite of the evidence."

None of the witnesses, other than Braun, appraised the livestock, machinery and equipment. The only other evidence as to the value of the livestock and grain consisted of a credit application which, after being signed in blank by the appellant, listed livestock at $33,010 and grain at $22,235. Although there was testimony that appellant signed the credit application in blank, Mr. George House, the manager of the credit agency, did testify on cross-examination that:

"As far as number of cattle, quantity of feed, and amount of liability I took Mr. Leeder's figures."

We think the loan application had sufficient probative value so as to be used by the trial court in arriving at

the composite figures of $24,000 for livestock and $19,000 for grain.

As to machinery and equipment, Braun's appraisal of $17,000 is contrasted by the appellant's 1968 income tax return, which listed their original cost at $36,155, $18,466 of which was purchased in 1967. Although original cost does not, except coincidentally, coincide with market value, it can serve as a starting point which, when used in conjunction with Braun's $17,000 appraisal, justifies the trial court's $27,000 figure. This court has several times held that in determining market value of property, the elements of cost and depreciation are proper factors for consideration. *Superior Nursing Homes, Inc. v. Wausau* (1968), 37 Wis. 2d 570, 575, 155 N. W. 2d 670.

### *Alimony and attorney's fees.*

The appellant's contention as to alimony and attorney's fees is simply that they create undue hardship when coupled with the annual $2,253.25 payment required by the property division (one eighth of $18,026) and his other liabilities which total $162,880.

Sec. 247.26, Stats., provides that the court in dividing and distributing both the real and personal estate of the husband between the parties should give "due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case."

In a very recent case, this court abandoned the concept of any mandatory starting point formula for the division of the estate of the parties in divorce actions, stating:

". . . It is the equitableness of the result reached that must stand the test of fairness on review. . . . All factors favorable to either party must be placed on the scales, and the scales must then balance. . . ."

". . . Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. Whether the property was acquired during the marriage or brought to the marriage makes a difference. Since the Wisconsin statute provides that separate property of the wife, possessed by her before the marriage or acquired solely by her efforts, is to be awarded to her, the amount of such separate estate is a proper factor to consider in determining how much of the husband's or marital property is also to be awarded to her. . . ." [1]

In the case before us the trial court had before it a marriage that had remained intact for over twenty-five years. The wife had no separate estate of her own. The wife had borne and helped raise the three children of the parties. In *Lacey,* this court observed that:

". . . The contribution of a full-time homemaker-housewife to the marriage may well be greater or at least as great as those of the wife required by circumstances or electing by preference to seek and secure outside employment. . . ." [2]

Apparently the trial court viewed the respondent here as exactly such a full-time homemaker-housekeeper who had contributed more than her full share to the partnership of this marriage. On the record he did so correctly.

Additionally, the property division ordered by the trial court is buttressed by what the record establishes as grievous misconduct of the husband. On this point, the trial court in its opinion stated:

---

[1] *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 382–384, 173 N. W. 2d 142.

[2] *Id.* at page 383.

"The evidence further substantiates that the lengthy and continued romantic relationship between defendant and Delores Hatlevig started prior to plaintiff's leaving the home and her starting of the first divorce proceeding. Several witnesses testified to having seen defendant and Mrs. Hatlevig together publicly on various occasions and over a substantial period of time. Neither defendant nor Mrs. Hatlevig deny this. They admit further that it has become quite customary for Mrs. Hatlevig to stay overnight at defendant's house. . . ."

With respect to alimony, we think the nominal award of $60 per month under all of the circumstances is not excessive.

Appellant also questions the award of attorney's fees in the amount of $1,400. The matter of allowance of attorney's fees is within the discretion of the trial court. Unless the court has abused its discretion, its determination will not be upset upon appeal.[3]

Here the respondent requested that she be awarded the sum of $2,000 to be paid as attorney's fees and costs and disbursements of the action. The trial court, in conformity with the rule of *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 511, 512, 155 N. W. 2d 130, did not allow the assessment of the entire amount but reduced it to $1,400.

We conclude that the division of the estate, the alimony award and the award of attorney's fees do not constitute an abuse of discretion on the part of the trial court.

*By the Court.*—Judgment affirmed.

[3] *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 158, 138 N. W. 2d 185.