PARSONS, Respondent, v. PARSONS, Appellant.

*No. 411. Submitted under sec. (Rule) 251.54 May 3, 1975.—*
*Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 629.)

748

For the appellant the cause was submitted on the briefs of *Bruce Gillman* and *Arthur, Tomlinson, Gillman & Travers, S. C.*, all of Madison.

For the respondent the cause was submitted on the brief of *Wheeler, Van Sickle, Day & Anderson* of Madison.

HANLEY, J. Three issues are presented on this appeal:

1. Did the trial court abuse its discretion in the property award to Mrs. Parsons?

2. Did the trial court abuse its discretion in the alimony award to Mrs. Parsons?

3. Did the trial court abuse its discretion in denying further contribution to Mrs. Parsons' attorney's fees?

*Property division.*

Mrs. Parsons contends that she is entitled to a larger share of the division of the estate than was awarded to her by the trial court. She received approximately 32 percent of the total estate. It is contended that the real test on appeal is not abuse of discretion, but rather fairness and uniformity.

This court has repeatedly stated that the division of property is a matter of discretion for the trial court. *Jordan v. Jordan* (1969), 44 Wis. 2d 471, 474, 171 N. W. 2d 385; *Leeder v. Leeder* (1970), 46 Wis. 2d 464, 468, 175 N. W. 2d 262; and *Markham v. Markham* (1974), 65 Wis. 2d 735, 748, 223 N. W. 2d 616. In *Jordan v. Jordan, supra,* page 474, it was said:

". . . This discretion '. . . must prevail in the absence of some mistake or error respecting the facts upon which it rests which would amount to an abuse of discretion.' *Horel v. Horel* (1952), 260 Wis. 336, 340, 50 N. W. 2d

673; *Morris v. Morris* (1961), 13 Wis. 2d 92, 93, 108 N. W. 2d 124."

However, in *Leeder v. Leeder, supra,* this court said (pp. 468, 469) :

"An abuse of discretion arises when the trial court has made a mistake or error with respect to the facts upon which the division was made or when the division itself was, under the circumstances of the case, either excessive or inadequate. *Lindahl v. Lindahl* (1963), 19 Wis. 2d 379, 390, 120 N. W. 2d 142, 121 N. W. 2d 286."

Before reaching the merits of Mrs. Parsons' contention that she is entitled to a larger share of the estate, it is necessary to consider Dr. Parsons' contention that the trial court did not properly determine the value of the estate. This argument is made in an effort to show that Mrs. Parsons actually received more than one third of the estate under the trial court's award.

The court, in determining the amounts in the savings accounts of the parties basically used the amounts in those accounts at the time of the commencement of the action except for $2,000 used to pay taxes. Between that time and the time of trial, the amounts in those accounts were reduced by over $23,000. Dr. Parsons had purchased a 1972 Buick at a cost of $5,242, furnishings for his apartment at a cost of $5,451, and paid $5,000 to his mother. Dr. Parsons, in his brief, recognizes that $18,047.56 was spent on such expenditures. He also spent between $1,000 and $1,500 for a vacation to Arizona and used other moneys for various expenses incurred by himself and his family. The property purchased was not included in the estate although Dr. Parsons testified that the furnishings had a value of $3,000, in his opinion, and it was stipulated that the 1972 Buick had a "blue book" value of $3,600.

In its written decision on May 21, 1973, the trial court explained why it used the original amounts in these accounts:

"The 'cash' account includes the purchase price of the plaintiff's Buick automobile and his apartment furnishings. The court cannot appropriately accept not only the depletion of the cash assets of a divisible estate but also the argument that items purchased with said cash must then be included at a depreciated figure. The party so changing the character of the assets must bear the diminution in value. Also included in the cash accounts is the $5,000 paid by the plaintiff to his mother. The testimony is conflicting as to amount loaned, amount previously repaid and the existence of any actual indebtedness. It does not seem appropriate that at a time after the commencement of this action the plaintiff should somewhat suddenly reduce the estate of the parties by $5,000."

As to the $5,000 payment to Dr. Parsons' mother, Mrs. Parsons testified that she was not aware of any obligation of this nature. She said they had lived in an apartment owned by her father-in-law and had borrowed about $2,000 from him, but she thought this had been repaid. Dr. Parsons testified that while there was no note or other evidence of indebtedness as to this, he had a long-standing agreement with his parents that he would repay them.

In *Caldwell v. Caldwell* (1958), 5 Wis. 2d 146, 92 N. W. 2d 356, it was held that where a husband made a gift or transfer, without consideration, of a substantial portion of his property to a third person to escape or minimize the division of property which might be ordered against him, the court has the power to make the transferee a party to the divorce and cancel the transaction to the extent necessary to protect the rights of the wife and minor child on the theory of fraud on the wife.

The doctor contends that if the $18,047.56 is to be included in the accounts, then there should be considered as being in these accounts a total of $20,402 [the amount actually in the accounts ($2,354.56) and the amount spent for the car, furniture and payment to his mother ($18,047.56)].

Taking this figure as what should be considered as being in these three accounts, there is a difference of $5,365.88 between the amount found by the trial court and the amount Dr. Parsons contends should have been found to be in those accounts. The following table shows how this figure is reached:

| | |
|---|---|
| Amount found by the court to be in all accounts | $27,201.94 |
| Less amounts in accounts not in question.... | 1,433.94 |
| Amounts in accounts in question as found by the trial court | $25,768.00 |
| Less the amounts in these accounts at the time of trial | 2,354.56 |
| | $23,413.44 |
| Less the amounts spent on the car and furniture and given to the Doctor's mother.... | 18,047.56 |
| | $ 5,365.88 |

Here, Dr. Parsons contends that the court erred at least insofar as not deducting from the amounts in the savings accounts those amounts withdrawn for purposes other than the purchase of the car and furniture and payment to his mother. There is merit to his contention and the value of the estate as found by the trial court should be reduced by the sum of $5,365.88.

The values set for the Jackson Clinic Retirement Trust and the Jackson Clinic Building Corporation are also challenged. The trial court set the values at $39,495 and $4,500 respectively. It is argued that these amounts should have been reduced to their present values. The trial court, in its "Memorandum Decision" of May 21, 1973, indicated that it did not reduce these figures to their present value because Dr. Parsons is in an absolute position to determine at what time he would sell the stock and take his interest in the trust.

Under *Schafer v. Schafer* (1958), 3 Wis. 2d 166, 87 N. W. 2d 803, the value of a retirement fund must be

taken into account in making the division of the estate. Mrs. Parsons contends that the present values of these amounts should not be considered because Dr. Parsons has an unrestricted right to cash in his interest in the trust and sell his stock. The affidavit of John L. Garrett, business manager of Jackson Clinic, Chartered, however, indicates that cash value of the retirement trust is only available upon termination of employment. The stock in the building corporation may be sold at anytime.

Recently, this court decided the case of *Pinkowski v. Pinkowski* (1975), 67 Wis. 2d 176, 179, 226 N. W. 2d 518, in which it was said:

"The trial court in its directions for findings of fact and conclusions of law said, 'It is clear that Mr. Pinkowski should not be required to terminate his employment so that the proceeds of his retirement program would be available for division.' We agree. However, the present value of the fund as determined by the trial court must be included in the assets to be divided between the parties."

Therefore, to properly determine the value of the interest in the retirement trust it would be necessary to determine its present value.

The exhibit offered by Dr. Parsons sets the present value of the $39,495 interest in the retirement trust at $14,629.72. This computation was made using seventeen years and six percent. Sec. 138.04, Stats., sets the legal rate of interest at five percent. The present value of the interest in the retirement trust using the formula found in Wis J I—Civil, No. 1796 is $17,246.72. The difference between the value used by the trial court and the present value is $22,248.28.

The net estate of the parties would, under the above adjustment, be $123,461.78 ($151,075.94 — $22,248.28 — $5,365.88). The $49,377.76 awarded to Mrs. Parsons would be approximately 40 percent.

As to Mrs. Parsons' contention that she is entitled to a larger share of the estate, it is necessary to determine if there was an abuse of discretion. The trial court said it considered the following factors: ". . . the age of the parties, the length of the marriage, the source through actual work effort of the bulk of the estate, the 'future interest' nature of the various Jackson Clinic interests, the fact that the court awarded alimony, and the amount of the alimony."

In *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 382, 383, 173 N. W. 2d 142, this court said:

"The division of the property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking. It is literally a partnership, although a partnership in which contributions and equities of the partners may and do differ from individual case to individual case. In a brief marriage, particularly as to property which the husband brought to the marriage, one third to the wife may be too liberal an allowance. In a long marriage, particularly as to property acquired by the parties during the marriage, fifty-fifty division may well represent the mutuality of the enterprise. . . . The contribution of a full-time homemaker-housewife to the marriage may well be greater or at least as great as those of the wife required by circumstances or electing by preference to seek and secure outside employment. The formula for division derives from the facts of the individual case. . . ."

Here, the marriage lasted over twenty-six years. The parties were both in their late forties. Mrs. Parsons is a college graduate, but has not worked since 1950. Dr. Parsons obviously has the ability to support himself. Their twelve-year-old daughter lives with Mrs. Parsons, Mrs. Parsons worked during the first four or five years of the marriage. During this time, Dr. Parsons was able to complete his medical education. Mrs. Parsons quit working shortly before their first child was born

in July, 1950. Since that time, she has taken care of their three children and their home.

The division of the property in this case is inadequate as to the amount awarded Mrs. Parsons. The trial court's award of $49,377.76 undervalues her contribution to this marriage of twenty-six years and amounts to an abuse of discretion.

We think Mrs. Parsons should have been awarded an additional $10,000 so that her share of the estate would be $59,377.76. This would be approximately 39 percent of the net estate as determined by the trial court. However, as previously pointed out, the net estate is valued at $123,461.78. This would be 48 percent of it.

As to the division of property, the judgment is modified so as to award Mrs. Parsons a total award of $59,377.76.

*Attorneys' fees for trial.*

Mrs. Parsons contends that the trial court abused its discretion in not allowing a further contribution to her legal fees incurred for trial. Her attorney, who is not representing her on this appeal, submitted a bill for services rendered and for disbursements in the amount of $3,753.40 less $400 paid by Dr. Parsons for a total of $3,353.40. The hours spent on this case were listed at 104 1/4 hours. The trial court determined that each of the parties should bear their own attorney's fees except as had been ordered previously in the sum of $400.

Contribution toward attorney's fees is also a matter within the discretion of the trial court and unless the trial court has abused its discretion, its determination will not be upset upon appeal. *Leeder v. Leeder, supra,* page 472.

"In order for a court to direct the husband to contribute toward his wife's attorney's fees in a divorce

action, there must be established a need on the part of the wife and an ability to pay on the part of the husband." *Hennen v. Hennen* (1972), 53 Wis. 2d 600, 608, 609, 193 N. W. 2d 717.

In this case, the trial court gave no reasons for requiring the parties to bear their own attorney's fees and did not specifically make findings as to the need of the wife and the ability of the husband. It did not find the fees to be reasonable, but it did not object to them as being unreasonable in ordering the parties to bear their own attorney's fees.

The record reveals the need on the part of the wife and an ability to pay on the part of the husband. The total fee of $3,753.40 is not unreasonable. Recently, this court found the expenditure of 100 hours plus not to be unreasonable in a case involving a contested divorce, five days of trial and challenges to many of the alleged assets and liabilities of the husband, requiring expert testimony, appraisals, lengthy investigation and extended trial preparation. *Markham v. Markham, supra.* In this case, the action was initially brought by Dr. Parsons and contested by Mrs. Parsons but Dr. Parsons' complaint was withdrawn prior to trial. The trial lasted two days. There were numerous challenges as to the values of certain assets and what was happening to the assets pending trial. Under the circumstances, the fee of $3,649 and disbursements of $104.40 were reasonable.

After a review of the record and giving consideration to all essential factors, it is our judgment that some additional contributions should have been awarded. The trial court did award $2,000 for contribution toward the fees of Mrs. Parsons' attorney on this appeal based on an estimate of $3,500 plus $1,000 for costs and disbursements. We are of the opinion the trial court abused its discretion in not allowing an additional contribution for Mrs. Parsons' trial attorney. The judgment is modified to provide an additional $2,000 payment for Mrs. Parsons' attorney's fees incurred for trial.

*Alimony award.*

As with the division of property, the matter of alimony is within the sound discretion of the trial court and will not be overturned unless the trial court has abused its discretion. *Hirth v. Hirth* (1970), 48 Wis. 2d 491, 180 N. W. 2d 601.

"Proper discretion is exercised where the trial court has considered the needs of the wife . . . and the husband's ability to pay . . . ." *Dittberner v. Dittberner* (1972), 54 Wis. 2d 671, 676, 196 N. W. 2d 643.

The trial court awarded Mrs. Parsons $800 per month alimony. Dr. Parsons' average gross income for 1970–1972 was $55,287 per year and the average net income was $37,833 per year. The trial court said it considered the factors given above as factors relevant to the division of property as well as the health, employment background, expertise and apparent earning ability of the parties in making this determination.

Mrs. Parsons' argument raises two points: (1) She has earned the right to maintain her present standard of living meaning that she has earned the right not to have to give up her home or to have to go out and work full time, and (2) the trial court failed to consider the tax consequences of these payments. She asserts that the award is not sufficient to meet her needs and that Dr. Parsons has sufficient assets and income to pay her enough to maintain her present standard of living.

With regard to the standard of living of the parties as a factor in this matter, this court has said:

"*Station in life.* The mode and standard of living of the parties during their marriage is one, but only one, of the factors that may be considered by the court. This is not to imply any entitlement of the wife to live, after divorce or separation, at same socioeconomic level that marked the years of living together. Ordinarily this is not possible. Whether or not two can live as cheaply as one, two persons living under two roofs

cannot live as well as the same two persons living under one roof. Court concern must be given to entitling both to live separately as reasonably well as is possible under the circumstances." *Hirth v. Hirth, supra,* page 494.

As to the tax consequences being considered, it was stated in *Wetzel v. Wetzel* (1967), 35 Wis. 2d 103, 110, 150 N. W. 2d 482:

"We think in making a division of property or in granting alimony or both that consideration should be given to the tax consequences. Disregarding the effect of taxes may result in an unrealistic and unjust result. . . . How the arrangement or division works out in reality after taxes is a test of fairness."

Here, Mrs. Parsons contends that she needs $16,000 per year to support herself and her daughter. She is to receive $800 alimony and $350 was awarded as support for the daughter. This is $13,800 per year but after taxes at a rate of 22 percent on her alimony, this is $11,688.

The alimony payments would be deductible for tax purposes for Dr. Parsons. An exhibit was received into evidence showing the tax consequences. This was pursuant to a request by the trial court to have it prepared. In listing the factors considered, however, the trial court did not list the tax consequences. In *Markham v. Markham, supra,* page 753, this court said:

"Appellant further contends that the trial court did not consider the tax impact of the alimony award. *Wetzel v. Wetzel, supra.* Where, as here, the issue was raised in the trial court, this court presumes that the trial court considered it. *Seiler v. Seiler* (1970), 48 Wis. 2d 400, 180 N. W. 2d 627. This court has not required that there be a specific finding in regard to tax impact on alimony awards. *Williams v. Williams* . . . [(1969), 44 Wis. 2d 651, 672, 171 N. W. 2d 902]."

In the instant case, the trial court did not abuse its discretion in awarding $800 per month alimony. Of

the $16,000 she claims she needs, over $3,000 is for mortgage payments on a $75,000 home with four bedrooms, living room, dining room, kitchen, family room, den and two basement game rooms, totaling 2,749 square feet. Only Mrs. Parsons and her daughter are living at home. The doctor should not be required to provide sufficient alimony for Mrs. Parsons to continue to live under the old roof. There was, at the time of trial, a $32,000 equity in the home.

In conclusion, it is determined that the findings of the trial court as to the value of certain of the assets of the marital estate are against the great weight and preponderance of the evidence. As a result the total value of the marital estate is $123,461.78. It is also determined that the trial court abused its discretion in dividing the marital estate and in not allowing additional attorney's fees to Mrs. Parsons.

The trial court's judgment must be modified to allow Mrs. Parsons $59,377.76 as her share of the marital estate. The judgment must also provide for an additional $2,000 as attorney's fees incurred by Mrs. Parsons at trial of the case.

*By the Court.*—Judgment modified and, as modified, affirmed. No costs to be awarded either party on this appeal.

DAY, J., took no part.