GRECO, Respondent, v. GRECO, Appellant.

No. *75–228.* *Submitted on briefs April 12, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 465.)

For the appellant the cause was submitted on the brief of *Nicholas C. Catania* of Milwaukee.

For the respondent the cause was submitted on the brief of *Richard A. McDermott* of Milwaukee.

CONNOR T. HANSEN, J. Angelo and Nancy Greco were married in 1952. Four children were born as a result of their marriage: Joseph in 1953, Thomas in 1957, David in 1960, and Donald in 1965. Angelo Frank Greco is a lawyer, practicing in Milwaukee. Nancy Lee Greco was employed as a secretary from 1954 until 1957, then remained at home as a housewife until 1973, when she resumed work as a secretary.

The plaintiff commenced this divorce action on November 1, 1973. She alleged cruel and inhuman treatment as the grounds for divorce. The defendant answered and counterclaimed for divorce. He also alleged cruel and inhuman treatment as the grounds for his counterclaim, and, in the alternative, adultery. In July, 1974, Theodore F. Mazza, a lawyer, was appointed guardian *ad litem* for the then three minor children.

No formal order regarding temporary custody has ever been entered in this matter. The three minor children remained with their mother in the family residence after the commencement of this action. In January of 1974 the father returned to the household on his own initiative, and the mother left to live with her sister. The father has had actual custody of the three minor children from that time, although the children have visited with their mother frequently. After Angelo Greco obtained an order to show cause in March of 1975, the lawyer for Nancy Greco agreed to let the status quo continue pending the outcome of the divorce action.

After a trial of several days the court granted Nancy Greco a divorce on May 14, 1975, and dismissed the counterclaim of Angelo Greco. The court awarded custody of the three minor children to Nancy Greco, fixed support at $135 per month per child and alimony at $250

per month (later reduced to $150 per month), and divided up the property of the parties. A formal judgment to this effect was entered on June 19, 1975. The trial court refused to stay its judgment pending appeal by the husband, and this court has twice refused the same relief.

The following issues are presented on this appeal:

1. Is there sufficient evidence to support the trial court's finding of cruel and inhuman treatment?

2. Did the trial court abuse its discretion in its award of alimony or its division of the property?

3. Did the husband waive his right to a jury trial on the question of adultery?

4. Did the trial court err in basing its decision regarding custody, in part, upon the written reports of the guardian *ad litem*, and in conducting a portion of the trial without the guardian *ad litem* being present in court?

5. Should this court summarily affirm the judgment and impose double costs for violations of the rules relating to preparation of an appendix and filing of the transcript?

### Sufficiency of Evidence.

The trial court made the following findings as the basis for its ultimate finding that the defendant-husband had been guilty of a course of cruel and inhuman conduct toward the plaintiff:

". . . That the plaintiff has established a course of conduct on the part of defendant constituting cruel and inhuman treatment and has met the quantum of proof necessary to establish the same consisting of:

"1. Being critical concerning the plaintiff's attention to the children and her management of the home, when in fact her attention to the children and the home was adequate.

"2. Being critical of her work habits and work dress.

"3. Was critical to her friends and family about her working and her attitude toward the defendant.

"4. That he solicited her employer to terminate her employment and her parents to cease assisting her in taking care of the children and doing the family shopping and other matters concerning the family household.

"5. That he left the home of the parties without explanation of where he was going or when he would return.

"6. That the defendant continuously accused the plaintiff of association with other men in such manner as to suggest infidelity on her part, all without cause.

"7. That in the year 1973 the defendant on the matters heretofore indicated became argumentative, indicated jealousy and displayed a possessive authority concerning his possessions and family which excluded his wife and made it plain that he was going to have his own way.

"8. That he reacted with lack of understanding, to being sexually frustrated by his wife's inattention at a time when the court finds understanding and love was then dictated, rather than leaving the home and the family, as he did.

"The court further finds that such conduct in its totality constituted cruel and inhuman treatment, that such conduct has had a detrimental effect on plaintiff's health and that such conduct on defendant's part made it impossible for the parties to live together as husband and wife."

Defendant makes several claims of insufficiency in regard to these findings. First of all, he argues that there was no evidence that, as required, the defendant's course of conduct had a detrimental effect on the mental or physical health of the plaintiff.[1] In the recent case of *Heiting v. Heiting* (1974), 64 Wis. 2d 110, 118, 218 N. W. 2d 334, this court stated that "close relatives or

---

[1] See: *Jackowick v. Jackowick* (1968), 39 Wis. 2d 249, 252, 159 N. W. 2d 54, for a statement of the required elements of cruel and inhuman treatment.

associates can testify as to personal observations of objective symptoms" of mental or physical distress. In the case at bar, Irene Apalsch, a close friend of the Grecos, testified as follows:

"Q. Now, during the period of years that you have known the Grecos, say from 1965 up until the time this action was started, were you able to observe Mrs. Greco and her appearance and her attitude and condition?

"A. Yes.

"Q. Was there any change at all during this period, say from 1965 up until the end of 1973?

"A. Yes.

"Q. Would you tell us?

"A. She went from a cheerful, easy going, happy and outgoing person to being depressed, irritable and just— I just don't know any other way to describe it. She was just depressed.

"Q. How did this depression manifest itself to you?

"A. Oh, at one time I could see that she had been crying, and times when she would almost cry when she was talking with me. I have seen her with tears in her eyes. She was more irritable with everyone, I think. She found it difficult to stay on the subject. She would get—she would talk about something, all of a sudden the thought would escape her, and that was totally unlike her."

The defendant's course of critical and berating conduct occurred during this same time, and there is considerable credible evidence in the record that the major stressful factor in the plaintiff's life during this period was the conduct of her husband. The trial court could reasonably have inferred that the mental distress witnessed by Irene Apalsch was caused by this course of conduct. Its finding to this effect is supported by sufficient credible evidence in the record.

The defendant also argues that the trial court disregarded the misconduct of the plaintiff occurring after the commencement of the divorce action. On the contrary, the trial court specifically found that "after the

commencement of this action the plaintiff has engaged in a nonemployment association" with her employer "which indicates a lack of discreetness on her part." The trial court concluded, however, as it had the right to do, that this association did not cause or justify the prior course of cruel and inhuman treatment engaged in by the defendant, and that it did not rise to a separate course of cruel and inhuman treatment in its own right.

■ Finally, the defendant contends that the trial court unfairly transformed his reasonable concern over his wife's "misconduct" with her employer into cruel and inhuman treatment on his part. This is a distortion of the trial court's findings, and of the evidence in the record. First of all, the trial court made no finding of any marital "misconduct" by the wife at the time that the husband engaged in the course of conduct which he characterizes as reasonable concern over preserving their marriage. Such a finding would not have been supported by the evidence in this case. Secondly, the trial court did not agree that the defendant merely showed reasonable concern over preserving the marriage when he engaged in the course of conduct in question here. On the contrary, the trial court found that the defendant was unreasonably critical and jealous during the time in question. This finding is fully supported by the evidence adduced in the trial of this case. Moreover, it is not true, as the defendant argues, that his reactions to her continued employment were "in good measure her grounds of cruel and inhuman treatment." The evidence establishes, and the trial court found, that the defendant's unwarranted criticism extended over the whole gamut of his wife's outside interests and activities. There was sufficient credible evidence to support the findings of the trial court.

*Alimony and Property Division.*

The trial court awarded Nancy Greco $150 per month in alimony for the limited term of five years. She was also awarded $405 per month for the support of the three minor children. Her estimated total monthly expenses came to $800 per month. She was capable of earning about $500 per month as a secretary. Angelo Greco was capable of earning about $1,000 per month as a practicing lawyer.

As for property division, the trial court divided the major assets of the parties by awarding Nancy Greco the $20,000 equity in one of the residences owned by the parties and $2,700 of her personal savings, and by awarding Angelo Greco the $10,500 equity in the other residence, $7,500 in his Keogh plan, and certain savings accounts and accounts receivable, the amount of which is not accurately reflected in the record. Angelo Greco was also charged with failing to account adequately for the loss of $10,000 of the $25,000 in the parties' assets which he used up during the pendency of this action.

■ The defendant first claims that the trial court erroneously awarded child support in the guise of alimony in providing for $150 per month in alimony. In its original decision the trial court made a $250 per month alimony award. In doing so, the trial court stated that it was "somewhat meaningless" to grant custody to the mother and award support without making some provision for alimony. The award of $250 per month was also scheduled to end when the youngest of the three minor children reached the age of majority. The rule is that alimony and child support are "two different categories of support" which should not be intermingled by the trial court. *Farwell v. Farwell* (1967), 33 Wis. 2d 324, 330, 147 N. W. 2d 289. However, in making his argument, defendant overlooks the fact that the trial

court modified the alimony award by a postjudgment order. After a hearing, the trial court, by an order dated June 11, 1975, revised its alimony award downward from $250 per month to $150 per month, and provided that it should continue "for the limited period of five years," and not until the youngest child reached the age of majority. In so doing, it considered in its memorandum opinion only factors relating to the wife. This revision is reflected in the written judgment on review here. It cannot now be argued that the trial court erroneously awarded child support in the guise of alimony.

The defendant also challenges the property division made by the trial court on the ground that the trial court did not find that he had failed to account for $10,000 of the $25,000 in assets which he used up during the pendency of the action. We do not find support for this contention in the record. The trial court did state that it was not finding that "there has been anything willfully done by you to hide or to dissipate these assets, although I am not all sure of that." The trial court found Angelo Greco had not adequately accounted for "at least $10,000 of that sum." In addition, the trial court made the following finding in its formal findings of fact and conclusions of law:

". . . That the defendant has used up approximately $25,000.00 since the commencement of the action on November 1, 1973, without adequately accounting for approximately $10,000.00."

Given this finding, the trial court was required to charge this sum to Angelo Greco in dividing the property of the parties.

■ The defendant also challenges both the amount of the alimony award and the percentage of the property awarded to the plaintiff. The oft-stated rule is that

both the award of alimony and the division of property are within the sound discretion of the trial court, and will not be disturbed unless an abuse of discretion is shown. An abuse of discretion in regard to alimony arises when the trial court has failed to reasonably consider the needs of the wife and the husband's ability to pay. An abuse of discretion in regard to property division arises, as relevant to this appeal, when the trial court has made a property division which, under all the circumstances, is obviously excessive. *Parsons v. Parsons* (1975), 68 Wis. 2d 744, 229 N. W. 2d 629.

■ The trial court awarded Nancy Greco the sum of $150 per month in alimony for the limited period of five years. It also awarded her approximately forty-five percent of the total assets of the parties. No useful purpose would be served here by setting forth in detail how the specific factors relevant to an award of alimony and to a division of property fully support each of these awards. The trial court carefully determined what would be a fair award of alimony and what would be an equitable division of the parties' property. It did not abuse its discretion in regard to either the award of alimony or in the property settlement.

### *Jury Trial.*

The defendant-appellant argues that the trial court erred in refusing to submit his allegation of adultery to a jury. He relies upon sec. 270.07 (1), Stats., which provides in relevant part as follows:

"(1) An issue of fact in an action for the recovery of money only, or of real or personal property or for divorce or legal separation on the ground of adultery, must be tried by a jury except as otherwise provided in this chapter . . . ."

Sec. 270.32 provides three alternative methods of effecting a waiver:

". . . Trial by jury may be waived by the several parties to an issue of fact by failing to appear at the trial; or by written consent filed with the clerk; or by consent in open court, entered in the minutes."

█ It is undisputed that on July 17, 1974, the then lawyer of record for the defendant, signed without objection a notice of trial and certificate of readiness which stated that the case was an issue of fact for the court, and returned the same to plaintiff's attorney for filing with the clerk of court. In *Theuerkauf v. Schnellbaecher* (1974), 64 Wis. 2d 79, 84–89, 218 N. W. 2d 295, this court held that such actions constituted "written consent filed with the clerk," as provided in sec. 270.32, Stats. The same result must obtain here. We conclude that the defendant, who is a lawyer, by these actions of his counsel, waived the right to a jury trial on the issue of adultery.

## *Custody.*

In awarding custody to Nancy Greco, the trial court stated:

"I have had the benefit of a report from the Family Marriage Counsellor for the City of Milwaukee, and also have had a letter report from the guardian ad litem, Mr. Mazza, with respect to the custody question. Based on these findings and reports and all of the evidence in this case, the court finds and determines that the best interests and welfare of the children indicate that they remain together as a family, and that their custody should be granted to their mother, who is the plaintiff in this case."

Similarly, in its judgment the trial court stated that it was granting custody to the wife "based upon the reports

of the Family Marriage Counsellor and the Guardian ad Litem, Theodore F. Mazza, Esq., and all of the evidence herein."

At the time of trial, the court did not make these reports available to either counsel or enter them in the record. However, at the hearing on the husband's post-judgment motions, the trial court advised the husband to prepare an order providing for the disclosure of the reports and granting a rehearing on the contents of the reports. No such order appears of record on this appeal. Thus, it is presumed it was not prepared. The failure of the defendant to pursue this matter constitutes a waiver of any right he might have to examine the reports or examine the authors thereof. In *Bahr v. Bahr* (1976), 72 Wis. 2d 145, 240 N. W. 2d 162, the custody order was reversed because no guardian *ad litem* was appointed. Although not an issue in the case, *Bahr, supra,* p. 150, speaks to the issue of investigative reports in custody matters. In so doing, *Bahr* indicates it is error not to make such reports available to the parties. Such is not the situation in the instant case. Here, in response to the postjudgment motions of the defendant, the trial court specifically addressed the issue and granted the defendant such a right. He chose to not avail himself of it.

The defendant-husband also argues it was error for the trial court to hear part of the testimony relating to custody in the absence of the guardian *ad litem*. The guardian *ad litem* was present at a temporary custody hearing, on April 15, 1975. He was present during two days of a four-day trial which took place in April and May, 1975. He made a written report to the court which the court later made available to the defendant upon the presentation of an appropriate order. Both counsel informed the trial court they were willing to proceed with the trial without the presence of the guardian *ad litem*.

The trial court then did so. Under the facts of this case, the fact that the guardian *ad litem* was not present when some evidence was presented that related to custody, or when the trial court announced its bench decision regarding custody does not constitute reversible error.[2]

### Summary Reversal and Costs.

The plaintiff-respondent moves to affirm, without opinion, the judgment of the trial court, and to impose double costs upon the appellant, for violations of the rules of appellate practice. *Vonasek v. Hirsch & Stevens, Inc.* (1974), 65 Wis. 2d 1, 17, 221 N. W. 2d 815. It is obvious that the motion to affirm without opinion is denied. The appellant makes a countermotion to clarify the order of this court setting forth the times for filing typewritten and printed briefs, and to extend the time for filing the transcript. The motions of the appellant are denied.

The appellant failed to file any appendix with his brief. Sec. 251.34 (5), Stats. He failed to file the transcript in a timely fashion. Sec. 274.115.

The parties filed typewritten briefs with the approval of the court. However, the respondent was compelled to include in her brief a supplemental appendix containing the pleadings, the findings of fact and conclusions of law of the trial court, and the formal judgment of divorce. Ultimately, the appellant caused a transcript to be filed; however, no extension of time was ever granted. Also, he finally filed a brief which included an appendix containing the oral findings and conclusions of the trial court, its formal judgment, and two exhibits relating to

[2] *de Montigny v. de Montigny* (1975), 70 Wis. 2d 131, 233 N. W. 2d 463, mandated reversal because no guardian *ad litem* had been appointed. The case emphasizes the duties, powers and responsibilities of a guardian *ad litem*.

the real estate owned by the parties. Appellant's appendix does not contain an abridgement of the transcript of testimony pertinent to the numerous issues he has raised on appeal.

The rule is that where appellate procedural violations are numerous and substantial, this court may, in its discretion, impose double costs. We regard the rule violations in this case to be numerous and substantial and we deem the rules to have been grossly disregarded.[3] The plaintiff-respondent is awarded double costs.

*By the Court.*—Judgment affirmed. Costs awarded to the respondent as provided in this opinion.

---

[3] Ch. 160, Laws of 1975, effective January 17, 1976, created sec. 251.181, Stats., relates the printing specifications for briefs in this court and refers to typewritten briefs. It provides that they be ". . . reproduced clearly on paper of permanent quality, and in conformity with such rules as the court may prescribe with regard to organization, binding, color of print, and size of print, paper and margin." Existing rules of this court in this regard have not been modified; therefore until such time as they are modified, the existing rules prevail as to all briefs, whether printed, typed, duplicated or otherwise reproduced.