GRAICHEN, Appellant, v. GRAICHEN, Respondent.

*April 29—June 4, 1963.*

201

202

For the appellant there was a brief and oral argument by *Carlton Roffa* of Milwaukee.

For the respondent there was a brief by *Corrine Lind* of Coloma, attorney, and *Callahan & Arnold* of Columbus of counsel, and oral argument by *Carroll B. Callahan*.

DIETERICH, J. There are two issues on this appeal: (1) Whether the record will sustain a finding of a substantial change in circumstances since the original adjudication of custody, and (2) whether oral examination of the minor child, Gay Graichen, in chambers by the court, constitutes prejudicial error where such interview, though not objected to by counsel for plaintiff, was made a part of the record.

The general rule in change-of-custody cases is that a substantial change in circumstances must be established in order to warrant a change in the custody of children. *State ex rel. Hannon v. Eisler* (1955), 270 Wis. 469, 475, 71 N. W. (2d) 376.

The record and testimony reveal that Betty Graichen was awarded Gay's custody in the judgment of divorce dated February 7, 1957. Gay, on the date of the divorce judgment, was eight and one-half years of age. However, Richard Graichen took actual custody of Gay on the date of judgment of divorce. They lived in the home of his parents at Coloma, Wisconsin, until June of 1958, when Richard remarried.

Gay then lived with Richard, his second wife, and her two children by a previous marriage in their new home at Coloma, Wisconsin. Two additional children were born into the family during the period Gay lived with them.

On January 20, 1962, Gay went to Whitefish Bay, Wisconsin, to live with her mother and remained there until the instant proceedings were first heard on June 26, 1962. At this first hearing the court permitted Gay to return to

Coloma for a period of thirty days on the condition that she would stay out of a bar which was a part of the resort Richard, her father, had recently purchased. When the hearings were resumed on July 24, 1962, Richard had sold the resort in order to eliminate any objection to the propriety of raising a teen-age girl at such an establishment.

The record is voluminous and it would not serve any good purpose to review it in total. The findings of fact relevant to this issue are, briefly, that Richard and Joyce Graichen, his second wife, are proper and fit persons and that their home is a fit and proper place for raising Gay; that Richard disposed of a very good resort business because of his concern over the welfare of his daughter; that Richard did not alienate Gay from her natural mother Betty, but that such alienation was the result of the mother's lack of love and affection toward the daughter; that Betty Graichen has not offered to maintain a home for Gay since the divorce and that the home presently maintained by her is not a fit and proper place in which to raise Gay.

The trial court made an oral decision from the bench. The following are excerpts of the oral decision and opinion contained in the record:

". . . the father . . . has taken a real interest in all of his children, . . . he has been an outstanding citizen in his community, taking part in the best civic and church activities there.

"The court was very impressed by the outstanding people . . . summer residents . . . came into this court and voluntarily spoke in behalf of Mr. Graichen's operation of that resort. . . .

". . . the court in June, . . . took . . . a dim view that he [Richard] sold beer to teenagers . . . the father was sufficiently concerned about the welfare of his daughter so that he made immediate arrangements to dispose of this business although it's a very lucrative business and although

his income is not very large for a man who has seven people dependent upon him for support, . . .

". . . Joyce Graichen . . . has demonstrated to me that she's a woman of good character who has done a good job of what must be often a very difficult thing in trying to raise three sets of children, . . .

". . . Betty Graichen . . . a well intentioned woman who unfortunately does not have a good basic understanding of the more important things of life. . . .

". . . the child was alienated from her mother by the acts of the mother. . . .

". . . the reasons given by the mother for not taking the girl are [not] satisfactory. . . .

". . . the court is giving consideration to the two homes. In the one case we have a home in which a high degree of family feeling seems to have developed—that is the home of Richard Graichen—a good feeling, it's a rounded home, it has a father and a mother, and . . . brothers and sisters. On the other side we have an apartment in Whitefish Bay which the girl has to occupy a room with her mother, and the court will say I am somewhat shocked by the apparently relaxed attitude that the mother has toward her friend, Mr. Poyer. I have no quarrel with Mr. Poyer, but the mother permitting him to remain there, under any circumstances, overnight, the court can't accept that as the way to raise a daughter.

"And certainly the mother's activities in this almost childish attitude of taking this watch that had been given to this girl by her grandparents and taking it away from her in the moment of childish anger does not establish to this court that Betty Graichen is capable of handling the problems that she would face if she had her daughter with her."

The trial court's oral opinion and findings of fact are supported by the record.

The trial court is vested with a large discretion in determining what is for the children's best welfare and to whom the custody of the children shall be awarded. In reviewing custody cases, this court relies heavily upon the determination by the trial court. Except where there is a clear

abuse of discretion, the trial court's order will prevail. *State ex rel. Hannon v. Eisler, supra.*

The fact that Richard remarried and is able to provide a normal home, coupled with the other circumstances revealed by the record in this action, is sufficient to constitute the necessary change of circumstances to grant a change of custody. See Anno. 43 A. L. R. (2d) 363, 383, Custody of Child—Remarriage—Effect.

As to the second issue, counsel for Betty contends on this appeal that the reading into the record by the trial court of its conclusions and observations of its interview with Gay was error.

In custody cases it is inadvisable to fix rules which are inflexible. Each case must be considered in the light of all of the facts and circumstances as they appear in the record. *Dodge v. Dodge* (1955), 268 Wis. 441, 444, 67 N. W. (2d) 878. In the instant action at the adjourned hearing on July 31, 1962, when Gay was interviewed by the trial court in chambers with reference to her preference as to which parent she desired to live with, she was lacking only one day of attaining the age of fourteen. This court is fully cognizant of the rights of the natural mother and the desirability of a young girl to live with her mother, but other facts are also important, including the child's wishes as to her habitation.

The relevant parts of the record as they pertain to the court's private interview of Gay read as follows:

The Court: "The Court would, however, like to talk to her alone a few minutes in chambers. Do you have any objection to that, Mr. Roffa, to the court talking to Gay alone?"

Mr. Roffa (Counsel for plaintiff-appellant) : "I have no objection. I have the utmost confidence in the court, your Honor, but for the record, will this be as between the Court and the child? How informal will it be? Will that be under oath and made part of this record or not?"

The Court: "No, it would not, it would simply be so the court might have a few minutes alone to observe her and to at least try to ascertain for what it may be worth here."

Mr. Roffa: "Sure, I have no objection, your Honor. ○ . . ○"

A recess was then taken, the court returned, and the record continues:

The Court: "Let the record show that the Court has conferred with the child in question in Chambers. I did not place her under oath, I did not examine her as to facts and background, except I will say to counsel that I did ask her relative to the detective's statements that he saw her in the tavern and the Court is satisfied that was probably an error in that testimony.

"The girl has told me that she much prefers to remain in Coloma, that she has strong feeling toward her father going back to her very early years, that she has a strong attachment toward her paternal grandparents who live near them, and that even though they will no longer have the resort that doesn't really seems to make much difference to her, nevertheless, she still prefers to remain in Coloma, *for what that may be worth.*" (Emphasis supplied.)

The italicized language above reveals that the court was not significantly influenced by Gay's preference of Coloma rather than Whitefish Bay and the findings of fact place no emphasis on her wishes in this regard whatsoever.

It should be noted also that Gay's desire to return to Coloma was well known to the court as her intention was revealed through the testimony of several witnesses. The only remarks the court made in its oral decision which could be attributed to the court's interview with Gay are the following:

"This Court is going to be governed in this case by what he believes to be in the best interest of this girl. The Court will say into the record that he has been very—and I em-

phasize that—very impressed by this young lady. She's a good, clean, wholesome girl of the best possible type. I discern no neurotic ideas or tendencies in her. I found her sensible beyond her years. . . .

"And if this girl were only interested in being around a resort, we should now find her unhappy at the sale of the resort and willing to go back to Milwaukee, but the court didn't find her so, she's looking forward to living in Coloma and being near her grandparents. . . ."

In *Morris v. Morris* (1953), 121 Cal. App. (2d) 707, 709, 264 Pac. (2d) 106, 107, the court said:

"The court made no statement of what the children had said in the interview. Plaintiff criticizes the practice as one which permitted the court to take evidence that was not known to the parties, or their attorneys. No request was made for a statement by the court. Nevertheless we think it would be the part of wisdom for the court to make a record of such interviews with children in custody cases in order to protect itself against any suspicion of unfairness on the part of the parent against whom the decision is rendered."

In circumstances similar to those in the instant action, the court in *Johnson v. Johnson* (1958), 7 Utah (2d) 263, 266, 323 Pac. (2d) 16, 18, stated:

"The record rather reflects that he [the court] correctly regarded the expression of preference as mere advice as to the desires of the child and as only one of the factors to be considered in determining what course would best serve her welfare. There was nothing inimical to the rights of the plaintiff in the procedure followed."

This court in *Jones v. State ex rel. Falligant* (1933), 211 Wis. 9, 17, 247 N. W. 445, stated:

"As we have said in many cases, the primary consideration in cases involving the right to the custody of a minor child is the welfare of the child. The so-called 'right' of parents must yield when the exercise of that right will be

detrimental to the child's interest. It is not a right to be vindicated in the law as the possession of a chattel should be. The so-called right is really a privilege to rear the child and prepare it for life . . . the time is not far distant when this girl or young woman will take charge of her own life, whatever the decision of this court may be. It would seem proper and just to give some consideration and weight to her wishes and desires in the matter.

"Our statutes (sec. 319.01) provide that a minor over fourteen years of age may nominate his own guardian, who if approved by the court shall be appointed. Courts ordinarily give much consideration in cases where guardians are to be appointed to the wishes of children. In *In re Goodenough,* 19 Wis. *274, it was said that a girl twelve years old ought to have been consulted as to her choice, and it may be inferred at least that her choice should have influenced the action of the court."

See also *Vilas v. Vilas* (1931), 184 Ark. 352, 42 S. W. (2d) 379.

We determine that under the facts and record in the instant action, Betty Graichen was not prejudiced by the inclusion in the record of the court's findings relative to its interview with Gay Graichen.

*By the Court.*—Order affirmed.