ISSUE
Bentley Kassal, J.
Having determined the wife is entitled to a divorce, the basic issue now is:
Shall a young mother, presently a full-time premedical student with exceptional grades, be given an equal opportunity for development and fulfillment by completing her medical school training although capable of being self-supporting as a secretary?
After a noncontested hearing, I adjudged that plaintiff was entitled to a divorce on grounds of abandonment and custody of the parties’ seven-year-old son. Thereafter, the parties did, at great length, contest the question of whether the wife is entitled to receive alimony, albeit for a short period, which would enable her to complete her premedical (IV2 years) and medical school education.
facts
The parties were married on January 27, 1967 when the husband was in his third year prelaw course at the University of North Carolina and the wife, a sophomore, studying biology, at the Florida State University. Recognizing that both could not simultaneously continue their education and be self-supporting, they agreed it would be preferable for him to *618 finish his undergraduate and law school education while she worked. She commenced working full time, earning a monthly salary of $328 until the day before she gave birth to a son, on August 9, 1967. She resumed working a few months later, in January, 1968, on a part-time basis, took care of her own and other children, on an exchange basis, and did typing at home for students, as well as her husband’s theses. This continued until she and her husband separated in October, 1972.
In the interim, Mrs. Morgan has become very proficient at shorthand and typing and also worked as a data analyst. I am satisfied that she is very skilled and, as an executive secretary or technician, could probably command an annual salary of at least $10,000 in normal economy and, very possibly, even in the present employment market.
In February 1973, she returned to the campus to pursue a full time educational career by undertaking a premedical course at Hunter College and her grades have been exceptional — a 3.83 general average (out of a 4.0 maximum) and an A score in the organic chemistry course, ranking 5th in a class of 70.
For his part, the husband has progressed well in his profession, having graduated from Columbia Law School after being selected for its Law Journal. His career started, as planned, with a one-year stint as a law clerk to a Federal Circuit Judge and he immediately thereafter became an associate at a prominent Wall Street law firm. His starting salary, in August, 1972 was $18,000 per annum with $500 increases on November 1, 1972, March 1, 1973, April 1, 1973, a $3,500 increase on November 1, 1973, a $1,500 increase on May 1, 1974 with the most recent increase of $3,000 on November 1, 1974, to a present salary level of $27,500. In all, he has done well and his future appears very promising.
Both parties have become encumbered with personal obligations resulting from loans, taken while they lived together and thereafter, for living and educational expenses, in addition to "loans” due their respective parents.
Extensive memoranda have been submitted delineating in great detail the financial needs of each party, as well as critiques as to the other’s budget. Neither budget appears to be significantly exaggerated but the total, when compared to the available income of the husband, illustrates the impossibility of relying on needs alone.
*619 LAW
Defendant cites the case of "Bosner” v "Bosner” (202 Mise 293), for the principle that the husband has no obligation to provide the funds the wife requires to attain a professional status. While the case did involve a wife who, as here, was a college student and wanted to become a doctor, the husband’s gross income was only $4,400. As the court stated (p 297): "On his earnings it would not be possible for him, were he so inclined, to meet the expenditures involved in her studies and the achievement of her ambitions.”
I have found one other case with a similar, though distinguishable, fact pattern. In Levi v Levi (10 Misc 2d 288), the husband was a college teacher and the wife a student in a doctoral (Ph. D.) program. She discontinued daytime work (in which she had earned $2,800 a year) so that she could take daytime courses to qualify for her degree in four years, rather than the eight years it would take if she attended only evening courses. After finding the husband’s total earnings to be about $10,000 and net income of $7,000, the court stated that the husband could not be expected to bear the cost of the wife’s education. The court did award as alimony and support for one child $3,900 a year. Under such facts, I would agree with the court’s statement that the wife’s education (and private school for the child) "are not burdens which can be placed upon defendant unless his means are clearly sufficient to permit.” (Id., p 289.)
There is a further consideration which bears upon my determination and that is the total cost to both parties of hewing to the traditional approach of compelling the wife to spend her life working at a level far below her capabilities, both in terms of intellectual attainment, as well as from a monetary point of view.
At a time when some call for treating the marriage contract as any other contract, it is particularly appropriate to speak of the wife’s duty to mitigate the damages to the husband upon breach. I agree that "when she can, she should also be required to mitigate the husband’s burden either by her own financial means or earning potential or both.” (Doyle v Doyle, 5 Misc 2d 4, 7.) But it is a corollary to the rule of mitigation that the injured party may also recover for the expenses reasonably incurred in an effort to avoid or reduce the damages. (Den Norske- Ameriekalinje Actiesselskabet v Sun Print. 6 Pub. Assn., 226 NY 1, 8.) In this case, any possible short- *620 term economic benefit which would result from the wife’s returning to a position similar to the one she held over two years ago, is far outweighed by the potential benefit, economic, emotional and otherwise, of her pursuing her education.
CONCLUSION
In coming to the conclusion I do, I am seeking to effect a balancing of many factors — the parties’ financial status, their obligations, age, station in life and opportunities for development and self-fulfillment. As noted in Phillips v Phillips (1 AD2d 393, 395, affd 2 NY2d 742), times have changed, owing not alone to the coequal status which a married woman shares with her husband, but also to the increase in the number of married women working in gainful occupations. (See, also, Doyle v Doyle, 5 Misc 2d 4, 6, supra.)
Further, I would like to cite a study by the Special Committee on Divorce of the National Conference of Commissioners on Uniform State Laws, entitled Uniform Marriage and Divorce Legislation: a Preliminary Analysis, which, in setting forth some of the factors to be considered in determining whether alimony is indicated and the quantum thereof, lists the following, among others: "(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find suitable employment.” (Emphasis added.)
Two of Webster’s Dictionary’s synonyms for "suitable” are "appropriate” and "fitting.” True, plaintiff could spend her life working at what she has been doing for the past seven years, after she, of necessity, agreed to help provide her husband with education for his "suitable employment” but that would not in my judgment be appropriate for the wife, a person with the capabilities of becoming a doctor.
The provisions of section 236 of the Domestic Relations Law direct, inter alia, that the court consider the "ability of the wife to be self-supporting,” as well as "the circumstances of the case and of the respective parties.” "Self-supporting,” in my judgment, does not imply that the wife shall be compelled to take any position that will be available when her obvious potential in life, in terms of "self-support,” will be greatly inhibited. (
Cognizance must also be taken of other language in the very same section, namely, "the court may direct the husband to *621 provide suitably for the support of the wife as, in the court's discretion, justice requires” (emphasis added). This has been interpreted to vest broad discretion in the court, "unfettered by” literal readings of the law. (Brownstein v Brownstein, 25 AD2d 205, 208. See, generally, Practice Commentary by David D. Siegel, McKinney’s Cons. Laws of N. Y., Book 14, Domestic Relations Law, § 236, p 136; 2 Foster & Freed, Law and the Family-New York [1966], § 22:6.) Obviously two households cannot be maintained as cheaply as one and we therefore encounter the threshold issue of whether the wife — a very capable woman, probably able to earn at least $10,000 annually as a secretary or office worker — shall be compelled to contribute this sum, or a fair share thereof, to her own support, at this time, or shall she have an opportunity to achieve a professional education based upon her potential, which will be comparable to the one her husband received as a result of her assistance by working during their marriage.
In my opinion, the answer to this issue is that under these circumstances, the wife is also entitled to equal treatment and a "break” and should not be automatically relegated to a life of being a well-paid, skilled technician laboring with a lifelong frustration as to what her future might have been as a doctor, but for her marriage and motherhood.
I am impressed by the fact that the plaintiff does not assume the posture that she wants to be an alimony drone or seek permanent alimony. Rather she had indicated that she only wants support for herself until she finishes medical school in 5 Vi years (lVi years more in college and 4 years in medical school) and will try to work when possible.
In this regard, she merely seeks for herself the same opportunity which she helped give to the defendant.
Accordingly, I am directing that the defendant shall pay a total sum of $200 weekly for alimony and child support, so long as she does not remarry and continues to be a full-time student, undertaking a premedical or medical course. (I am taking into consideration plaintiff’s agreement to work during her vacation periods when not prohibited by school work.) Completion of her medical school training and the awarding of an M.D. degree shall be deemed a sufficient change of circumstances and I am granting leave to the defendant to apply at such time for an appropriate modification to delete the alimony feature of this award.
In view of the extensive amount of legal work herein by *622 both counsel, the outstanding current obligations of defendant and defendant’s financial ability, I am directing that plaintiff be awarded a further counsel fee of $1,500 for all services rendered, which also includes disbursements.
Please submit findings of fact, conclusions of law and proposed judgment with any desired allocation of such alimony/ support award and visitation provisions.