JOHNSON, Plaintiff-Appellant, v. JOHNSON, Defendant-Respondent.

*No. 75–427. Submitted on briefs May 4, 1977.—*
*Decided June 1, 1977.*
(Also reported in 254 N.W.2d 198.)

For the appellant the cause was submitted on the brief of *Leonard L. Loeb, S. C.* of Milwaukee.

For the respondent the cause was submitted on the brief of *Warren L. Kreunen, William E. Taibl* and *von Briesen, Redmond, Schilling & Kreunen,* all of Milwaukee.

BEILFUSS, C. J. The plaintiff-appellant, Jeanne Priebe Johnson, and the defendant-respondent, Dr. Kenneth O. Johnson, were married on September 10, 1955. At the time of trial both parties were forty-two years

old. They had been married twenty years. They had three daughters who were fifteen, thirteen and twelve years of age at the time the divorce was granted. The second oldest daughter was born without her lower left arm.

The parties met when they were freshmen at DePauw University. They saw each other frequently throughout college and were married after Dr. Johnson completed his first year of medical school. The appellant received a degree in home economics and during the first four years of marriage she worked full time and provided a substantial portion of their support. Money was given to the parties by both of their parents and Dr. Johnson's parents paid his tuition. Dr. Johnson supplemented their income by working during vacations.

In 1962 to 1963 the defendant started his medical practice, with a specialty in pediatrics, and earned approximately $20,000. His earnings steadily increased until 1966 when they reached between $28,000 to $29,000. In 1967 he affiliated with the Milwaukee Medical Clinic, a corporation, and for the next three years suffered a lesser income. However by 1972 his gross earnings were $33,194; in 1973, $39,846; and in 1974, $39,679. The corporation provides health, life and disability insurance for the clinic members and their families.

The defendant is also one of several partners of the Good Hope Properties. This partnership owns the real estate in which the Milwaukee Medical Clinic is located.

The court found that the parties' estate had been accumulated during the marriage. It found the value of the estate was as follows:

(1) Equity in the homestead and adjoining
    lot                                               $40,270
(2) Securities
    Presently held in plaintiff's name                14,646
    Presently held in defendant's name                 7,745

| | | |
|---|---|---|
| (3) | Cash savings and checking accounts | Nominal |
| (4) | Business Interest | |
| | Good Hope Properties | 43,720 |
| | Shares in Milwaukee Medical Clinic, S. C. | 2,830 |
| | **Total** | **$109,211** |

As a member of the clinic the defendant received a salary of $36,000 per year. This amount was set at the beginning of the year to provide the doctor with a drawing account. His final annual earnings were dependent upon a formula determined by the clinic members and depended, to a substantial degree, upon the bills to the patients by each member. There were five or six pediatricians in the clinic membership and the defendant's billings were about mid-point among the pediatricians.

The trial court did not include the value of defendant's share of the clinic's accounts receivable in the value of the estate. It noted that there was a dispute as to the disposition of these accounts between him and the clinic. The dispute centered around their value if Dr. Johnson severed his relationship with the clinic. If there was no severance Dr. Johnson would take the receivables as part of his compensation. The court found that if he did sever his relationship with the clinic the value of the receivables would be a substitute for income as he established a new practice. The value of the receivables was $44,700.90 less the cost of collection.

There was also a dispute over the value of the household furnishings. The plaintiff valued the furnishings at $3,000, while Dr. Johnson argued they were worth $15,000. The court made no finding as to the exact value of the furnishings. It found the plaintiff "grossly undervalued" the furnishings and that the defendant included items that were not furnishings.

In the estate division the court awarded the plaintiff the homestead and adjoining lot, those securities in her

name, and all furniture, furnishings, appliances and equipment except the defendant's books and papers and other items of personal property of personal interest to him. The value of these items was not established but it appears it was not substantial.

The plaintiff was divested of any interest in all other property owned by the defendant.

The court concluded that the award of alimony and the division of the estate were interrelated. The plaintiff was awarded $650 per month alimony until all the children reached majority or were otherwise emancipated. The alimony was to be terminated if the plaintiff remarried or if the defendant died.

Support money for the three teenage daughters was set at $450 per month. Additionally, the defendant was ordered to pay for all medical and dental expenses including prescription drugs. The responsibility of medical care was Dr. Johnson's and the plaintiff's authority was limited to "emergency and minor medical matters." He was also required to maintain at least $60,000 of life insurance to secure the support order.

The first contention of the plaintiff-appellant is that the trial court improperly calculated the value of the estate. The trial court did not include the Good Hope Properties' partnership earnings or the value of the accounts receivable in the clinic in valuing the estate. The partnership earnings of $1,958 were not included in the estate because it did not appear that they would be paid to Dr. Johnson. Partnership earnings had not been paid in the nine previous years. Although he did not receive these earnings they were reported as income. The defendant did receive $3,936 in 1974. This sum was his share of the amount two doctors paid to become partners in the Good Hope Properties. Both of these amounts were appropriately excluded from the estate. There was no indication that Dr. Johnson would receive the partnership earnings. The partnership earnings were one indication of the value of Dr. Johnson's interest in the

partnership. The value of the partnership interest was also an indicator of Dr. Johnson's future income; it assisted the court in determining proper alimony and support awards.

The trial court set forth why it did not include the accounts receivable of the clinic as part of the gross estate. Dr. Johnson would only receive these accounts, less collection costs, if his association with the clinic terminated. If he remained with the clinic he would receive them as salary; if he left, this payment would be in lieu of salary.

This court has held that it is error not to include among the assets for division a pension fund vested in the husband. *Pinkowski v. Pinkowski,* 67 Wis.2d 176, 178, 226 N.W.2d 518 (1975). It has also held that it is error to include a profit-sharing trust as an asset in making division of the estate and to include it as income in awarding alimony. *Kronforst v. Kronforst,* 21 Wis.2d 54, 63-64, 123 N.W.2d 528 (1963). The trial court considered the accounts receivable as the equivalent to salary. In considering the amount of alimony and support to be awarded, it looked to Dr. Johnson's salary and his ability to pay. It was not error to view the receivables as salary. If Dr. Johnson remained with the clinic the receivables would be paid as salary. If he left, they would take the place of salary while he established his new practice. Because the receivables were viewed as salary, it would have been error to include them in the assets available for distribution.

Next, the appellant makes a series of arguments that challenge the alimony award, the division of the estate, the support award and the custody award. Each one of these determinations is within the sound discretion of the trial court.[1] In the absence of some mistake or error

[1] *Greco v. Greco,* 73 Wis.2d 220, 229, 243 N.W.2d 465 (1976); *Farwell v. Farwell,* 33 Wis.2d 324, 330, 147 N.W.2d 289 (1967).

respecting the facts upon which the award rests, the trial court's award must be upheld unless an abuse of discretion can be shown or, under all the circumstances, the amount of an award is clearly excessive or inadequate.[2]

The alimony award was $650 per month until all the children of the parties reached their majority. The plaintiff-appellant does not contest the amount of the award but argues that the court abused its discretion by making an award limited in time, thereby terminating its ability to change the award if circumstances changed. Sec. 247.26, Stats.,[3] explicitly states that the trial court may grant alimony for a limited period of time. Sec. 247.32[4]

---

[2] *Anderson v. Anderson,* 72 Wis.2d 631, 638, 242 N.W.2d 165 (1976).

[3] "246.26 *Alimony, property division.* Upon every judgment of divorce or legal separation, the court may, subject to s. 247.20, further adjudge for a limited period of time to either party such alimony out of the property or income of the other party for support and maintenance, except no alimony shall be granted to a party guilty of adultery not condoned, and the court may further grant such allowance to be paid by either or both parties for the support, maintenance and education of the minor children committed to the other party's care and custody as it deems just and reasonable. The court may also finally divide and distribute the estate, both real and personal, of either party between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the length of the marriage, the age and health of the parties, the liability of either party for debts or support of children, their respective abilities and estates, whether the property award is in lieu of or in addition to alimony, the character and situation of the parties and all the circumstances of the case; but no such final division shall impair the power of the court in respect to revision of allowances for minor children under s. 247.25. . . ."

[4] "247.32 *Revision of judgment.* After a judgment providing for alimony or other allowance for a spouse and children, or either of them, or for the appointment of trustees as aforesaid

states that alimony for a limited period of time shall not thereafter be revised or altered. A review of the findings of fact demonstrates that the court considered these and other factors. The division of the estate and the alimony award were closely interrelated. The court noted that the appellant's health and education appeared to enable her to obtain gainful employment but believed she should not be required to be solely dependent on her earnings immediately or while the children were minors.

The trial court in its memorandum decision made the following statement concerning the alimony award:

"The plaintiff's health and education appear to enable her to obtain gainful employment. However the defendant's abilities are such that she should not be required to be dependent solely upon her own earnings. Her stocks will produce some dividends. An important consideration is that she should be free to give primary attention to her responsibilities as a mother. The children are old enough that perhaps part-time employment is indicated. Further she has made a substantial investment in this marriage. Her husband now possesses skills which are productive of substantial earnings. Her skills have not been used, she now enters the job market at a disadvantage. She has no tenure.

"It seems reasonable that the Court should award the plaintiff alimony until the children all reach majority or are otherwise emancipated. The amount of course is

the court may, from time to time, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment respecting any of the said matters which such court might have made in the original action, except that a judgment which either fails to provide alimony for either party or provides alimony for either party for a limited period only under s. 247.26 shall not thereafter be revised or altered in either respect nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification."

subject to termination upon the defendant's death or plaintiff's remarriage. Because the Court has granted the plaintiff a lesser share of the estate which it would have awarded if there had been a division in lieu of alimony, her alimony should not necessarily be terminated if she obtains full-time employment. Plaintiff is encouraged to obtain employment if possible so as not to further depreciate her opportunities. The Court sets alimony in the amount of $650 per month payable semi-monthly."

In granting alimony for a limited period of time, the court made a judicial choice which it was empowered to make by the legislature.

The statutes were amended in 1971 to provide for limited alimony.[5] The legislature made a policy decision that a trial court was entitled to grant alimony for a limited period of time and would not be able to alter that award thereafter. We cannot conclude the trial court abused its discretion in providing for limited alimony; nor can it be said that the award is clearly inadequate. Alimony for a limited period is a two-edged sword as to both parties. Both parties know the amount of alimony to be paid and the duration of the payments. The certainty of this award allows the parties to make plans without fears that the award will change. But if either party's circumstances change so that payment is unnecessary or impossible, the award will not change. The plaintiff-appellant benefited from the certainty of the award and by knowing that within approximately six years she would have to be self-supporting.

The appellant contends that dividing the estate by awarding her the house penalized her for seeking the divorce by "saddl[ing her] with the expense and trauma of a forced sale of the homestead." This argument can-

[5] Laws of 1971, ch. 220.

not be accepted. The award of the homestead property did not, nor was it an attempt to, penalize the appellant. It was a logical division of the estate. The two substantial interests in the estate were the homestead and the business interest in Good Hope Properties. The interest in Good Hope Properties is Dr. Johnson's share of the ownership of the property which the Milwaukee Medical Clinic occupies. It would not have been advisable to grant the plaintiff-appellant an interest in this property. The only alternative was to award to her the homestead. It is true that substantial monthly payments on the mortgage remained and would be difficult to meet, but there was an available alternative. The homestead and the adjoining lot were appraised at approximately $89,000. The trial court found the equity to be $40,270. This means, of course, the mortgage was about $49,000. A letter from the Marshall & Ilsley Bank, an exhibit in the case, reveals the monthly payments on the mortgage on the house and additional lot are $326.74, and that if the principal were reduced by $20,000 the monthly payments would drop to $219.29 per month. The adjoining lot to the homestead, valued at $19,000, could have been or can be sold. The money obtained from such a sale can be applied to the mortgage, thus reducing the monthly mortgage payments. Whatever the solution, the award of the homestead was a reasonable effort to equitably divide the estate.

The plaintiff-appellant cites the court to *Parsons v. Parsons,* 68 Wis.2d 744, 229 N.W.2d 629 (1975), and argues that the support award was inadequate. The facts of *Parsons* are somewhat similar to this case. The alimony award in *Parsons* was $800 per month and the support award was $350 per month for one child. Here the support award was $450 per month for three children, one of whom was an exceptional child. It should be noted that Dr. Parsons' annual income was substantially greater than Dr. Johnson's. In the years 1970–72, Dr.

Parsons' average gross income was $55,287, whereas Dr. Johnson's average income for the years 1973 and 1974 was $39,765. The appellant received a substantially greater share of the estate than did Mrs. Parsons, and medical expenses of the Johnson daughters were to be incurred by Dr. Johnson.

While division of an estate, an alimony award and a support award are all separate and distinct awards, they cannot be made in a vacuum. The amount of support money will affect the ability of a spouse to make alimony payments and the division of property will effect the need and the amount of the other awards. The support award of $450 per month may have been somewhat low but it was not an abuse of discretion. This is particularly true when it is noted that in addition to support payments Dr. Johnson is responsible for medical expenses. Further, the award of support money is subject to modification if future circumstances warrant a revision.

In awarding custody of the children to the appellant the trial court stated "[b]y statute the person awarded custody is given the power and duty to authorize necessary medical, surgical, hospital, dental and institutional care. Because the defendant is a pediatrician and is concerned with the welfare of his children, the Court shall direct that the medical care shall be the full responsibility of the defendant with the plaintiff's authority being limited to emergency and minor medical matters." The appellant argues that such a custody award will produce absurd results. In determining custody the trial court is vested with wide discretion; the polestar is the best interests of the children.[6] The court did not abuse its discretion; the provision for major medical responsibility

[6] *Kuesel v. Kuesel,* 74 Wis.2d 636, 639, 247 N.W.2d 72 (1976); *Graichen v. Graichen,* 20 Wis.2d 200, 121 N.W.2d 737 (1963).

which rests with the defendant doctor can well be in the best interests of the children.

During the pendency of this action a new prosthesis for the parties' daughter, Virginia, was purchased by the appellant without consulting Dr. Johnson. The prosthesis was not a hook, but rather "like a hand." Dr. Johnson believed a hook, which was functional, was preferable to a cosmetic hand. Dr. Johnson had taken a course on juvenile amputees and believed most amputees preferred a hook. He stated that experts advised the use of a hook. While the trial court could well have required the defendant to pay for this prosthesis, under the facts of this case we do not believe it was an abuse of discretion to require the plaintiff to do so.

The appellant's final argument is that the court erred in allowing the defendant to assert his fifth amendment privilege regarding the allegation of adultery and the relation of his finances to the allegation. It is argued that the assertion of the privilege prevented the court from accurately determining his ability to pay as required by sec. 247.26, Stats.

There is no question that the right against self-incrimination exists in civil cases; however, the exercise of the right permits the trial court to draw an inference against the interest of the witness asserting the privilege.[7] In this case the trial court drew the inference and concluded that the defendant committed adultery. Additionally, the court noted that some of Dr. Johnson's "business expenses . . . may be questionable."

We do not decide whether the trial court permitted the privilege to be asserted on matters unrelated or irrelevant to evidence which could be used against Dr. Johnson in a subsequent criminal proceeding. This is so because even if the use of the privilege was applied improperly—in a too broad fashion—it did not prevent

[7] *Molloy v. Molloy*, 46 Wis.2d 682, 176 N.W.2d 292 (1970).

the trial court from determining ability to pay. The court was fully informed of the status, nature and source of the defendant's assets and income. From this information it was able to fairly divide the estate, award alimony and award support.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J. *(dissenting)*. The majority concludes that the trial court did not abuse its discretion in providing for alimony for a limited period of time. Unfortunately the majority opinion does not set forth the criteria or standards which the trial court should or did apply in making its decision. I therefore find it difficult to understand how the majority could then review the trial court's judgment and find no abuse of discretion.

Sec. 247.26, Stats., does not set forth the factors to be considered in awarding alimony.[1] This court has set

[1] *See* sec. 42 of Engrossed 1977 Assembly Bill 100, 1977 Legislature, which proposes the courts consider the following factors:

"247.26 MAINTENANCE PAYMENTS. (1) Upon every judgment of annulment, divorce or legal separation, the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(a) The length of the marriage.

"(b) The age and physical and emotional health of the parties.

"(c) The distribution of property made under s. 247.255.

"(d) The educational level of each party at the time of marriage and at the time of divorce or legal separation.

"(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(g) The tax consequences to each party.

them forth in the cases. The legislature has empowered the trial court to grant alimony for a limited period of time, but the legislature has not set forth factors to guide the courts in awarding "limited alimony." This court must do so if it is to review the trial court's determination.

This court has said, on numerous occasions, that the question of alimony is one within the discretion of the trial court and its decision should be based on all the facts and circumstances of the particular case.

The term discretion contemplates a process of reasoning. The process depends on facts that are of record or that are reasonably derived by inference from the record. The discretion must in fact be exercised and the trial judge must set forth the basis for the exercise of discretion. Adherence to this practice facilitates the decision-making process of the trial court in the first instance and aids appellate review.

I.

In awarding alimony for a limited time, the trial court should first consider the factors this court has set forth for determining alimony for an indefinite time. Justice ROBERT HANSEN in *Hirth v. Hirth*, 48 Wis.2d 491, 180 N.W.2d 601 (1970), set forth the two basic factors for the trial court to consider in awarding maintenance

"(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(i) Such other factors as the court may in each individual case determine to be relevant."

of indefinite duration— (1) the needs of the spouse (here the wife) requiring maintenance; and (2) the ability of the other spouse (here the husband) to pay. Alimony is thus placed on an economic basis—the need of one spouse and the ability of the other to pay.

As set forth in *Hirth* the factors to be considered as to the needs of the wife include: assets of wife; income of wife; age and physical and mental health of the wife; length of marriage and station of life. As Justice HANSEN noted, payments for maintenance "are not reparations for years spent as spouse. However, the length of marriage can affect employability, and does reflect the established standard and mode of living of the parties." As to "station of life," Justice HANSEN cautioned that "court concern must be given to entitling both to live separately as reasonably well as possible under the circumstances."[2]

The factors to be considered as to the ability to pay of the husband include: assets of husband; income of husband; debts of husband; age and health of husband; presence or absence of children. *Hirth v. Hirth, supra.* The husband's obligation to support minor children bears a direct relationship to his ability to pay alimony, and the wife's obligation to take care of minor children affects the wife's ability to be employed outside the house.

---

[2] *"Station in life.* The mode and standard of living of the parties during their marriage is one, but only one, of the factors that may be considered by the court. This is not to imply any entitlement of the wife to live, after divorce or separation, at same socioeconomic level that marked the years of living together. Ordinarily this is not possible. Whether or not two can live as cheaply as one, two persons living under two roofs cannot live as well as the same two persons living under one roof. Court concern must be given to entitling both to live separately as reasonably well as is possible under the circumstances. Here the court referred only to the 'station in life' of the wife, but it is evident that the court concern was with the standard of living of both parties, not the wife alone." *Hirth v. Hirth, supra,* 48 Wis.2d at 494.

The concept of alimony for a limited time is a logical extension of the concept adopted by this court of placing alimony on an economic basis. Limited alimony can be viewed as a clearing of the accounts of an economic partnership. In this case limited alimony would be based on a determination that one partner should contribute to the other in recognition of (1) the uncompensated contribution made by the spouse at home to the family's well being; (2) the loss of earning capacity suffered by the spouse during the period at home; and (3) the continuing responsibility on the part of the paying spouse to meet the financial needs of the homemaker spouse for a specified period to enable the homemaker to be self-supporting.[3]

[3] The Uniform Marriage and Divorce Act provides that upon divorce the property division should be the "primary means of providing for the future financial needs of the spouses." Alimony, which the Act calls "maintenance," is provided only when the property division provides insufficient resources and the spouse is unable to be self-supporting through appropriate employment or is the custodian of a child. The amount and duration of payments for maintenance are to be determined after the court considers certain factors.

Sec. 308 of the Uniform Marriage and Divorce Act provides:

"Maintenance

"(a) In a proceeding for dissolution of marriage, legal separation, or maintenance following a decree of dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

"(1) lacks sufficient property to provide for his reasonable needs; and

"(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"(b) The maintenance order shall be in amounts and for periods of time the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, his ability to meet his needs independently, and the extent to which a provision for

Limited alimony has at least three purposes: (1) providing an incentive and funds for a recipient spouse to seek employment or training for employment; (2) limiting the responsibility of the paying spouse to a time certain; and (3) avoiding future litigation relating to the modification of and enforcement of alimony. The trial court must, in determining whether to grant limited alimony, weigh these purposes against an appraisal of (1) the ability of the recipient spouse to become self-sufficient; (2) the ability of the paying spouse to continue the obligation of support for an indefinite time; and (3) the need for continuing jurisdiction of the court under the circumstances of the case. Care must be taken that a paying spouse is not relieved of an obligation to support a needy former spouse so that the obligation of support is imposed on the taxpayers of this state. *Taake v. Taake*, 70 Wis.2d 115, 130, 233 N.W.2d 449 (1975) (dissenting opinion).

## II.

In the case at bar the trial court was unable to determine, from the facts presented to it, the ability of the recipient spouse to become self-supporting. The trial judge therefore could not make a realistic appraisal and evaluation of the recipient spouse's (here the wife's)

support of a child living with the party includes a sum for that party as custodian;

"(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(3) the standard of living established during the marriage;

"(4) the duration of the marriage;

"(5) the age and the physical and emotional condition of the spouse seeking maintenance; and

"(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

true capabilities and prospects in the market place, including the time, education, training and counseling that might be needed to enable the wife to find appropriate employment. The judge therefore could not appropriately exercise his discretion to award limited alimony.

The record in this case is silent as to the wife's future employment opportunities. The record is silent as to her earning capability; there are no facts on which a realistic estimate of her future wage-earning capacity could be based. The record is silent as to what job her college degree in home economics (now twenty years old) equips her to hold. The record is silent as to the salary range of any job for which she would be qualified, and as to the possibility or probability of her getting a job in the community under present economic conditions. The record is silent as to whether she needs additional training or the time period for such retraining. The record is silent as to a realistic estimate of her need for or ability to profit from retraining.[4]

The trial court stated that it was granting alimony for a period limited to the children's minority for the following reasons:

1. "That the [wife's] health and education appear to enable her to obtain gainful employment."[5]

---

[4] With respect to job training, at least one court has found that under appropriate circumstances a wife should be given the opportunity to obtain an education based on her potential comparable to the one her husband received as a result of her assistance by working during their marriage. *Morgan v. Morgan*, 81 Misc.2d 616, 366 N.Y.S.2d 977 (1975), modif. 383 N.Y.S.2d 343 (1976).

[5] The court had made the following findings of fact relating to the wife's health, education and employment:

"Fifteenth. That the plaintiff has a college degree in home economics and has not sought employment during the marriage after the children were born; that she has had several interviews and might seek employment; that the plaintiff appears to be in good health.

". . .

2. "That the [husband's] abilities are such that [the wife] should not be required to be dependent solely upon her own earnings;"

3. "That [the wife's] stocks will produce some dividends."[6]

4. "That an important consideration is that the [wife] should be free to give primary attention to her responsibilities as a mother, however, the children are old enough that perhaps part-time employment is indicated;"

5. "That the [wife] has made a substantial investment in this marriage and that the [husband] now possesses skills which are productive of substantial earnings and that the [wife's] skills have not been used and she now would enter the job market at a disadvantage and she has no tenure."

6. "That the award of alimony as aforesaid is the basis of awarding the [wife] a lesser share of the estate which it would have awarded if there had been a division of estate in lieu of alimony but further finds that her alimony should not necessarily be terminated if she obtains full-time employment."

7. "That the [wife] is encouraged to obtain employment *if at all possible* so as not to depreciate her opportunities." (Emphasis added.)[7]

---

"Twenty-fourth. That the Court finds that the plaintiff has some earning ability and will probably seek part-time, if not full-time employment."

[6] The fair market value of the stock is about $15,000. If there was an average dividend yield of 5 percent, the income from the stock is $750 per year.

[7] The Findings of Fact state:

"Twenty-sixth. That the amount of division of estate and alimony are inter-related; that the Court has elected to grant the plaintiff limited alimony for the following reasons: that plaintiff's health and education appear to enable her to obtain gainful employment; and the Court finds that the defendant's abilities are such that she should not be required to be dependent solely

The trial court recognized the wife's need to take care of the children and suggested part-time employment. The court had no facts before it relating to the kind of job she was equipped to get or the expected compensation of such part-time employment. The court recognized that Mrs. Johnson is at a disadvantage in not having worked and not having job tenure, yet it suggested she continue to postpone full-time entry into the job market by remaining at home taking care of the children. The record shows the judge did not take into account the fact that this unemployed, not-recently-trained woman will be forty-eight years old when her youngest reaches the age of majority. At age forty-eight she will for the first time in twenty years seek full-time employment. Must we not recognize that even with retraining, the job opportunities open to a forty-eight year old woman at the entry level might be very limited? It should be noted that when the judge did refer to the wife's employment potential he expressed doubts as to her ability to get a job. The judge

upon her own earnings; that the Court finds that plaintiff's stocks will produce some dividends; that an important consideration is that the plaintiff should be free to give primary attention to her responsibilities as a mother, however, the children are old enough that perhaps part-time employment is indicated; the Court finds that the plaintiff has made a substantial investment in this marriage and that the defendant now possesses skills which are productive of substantial earnings and that plaintiff's skills have not been used and she now would enter the job market at a disadvantage, and she has no tenure; that the Court finds it reasonable to award the plaintiff alimony only until the children all reach majority or are otherwise emancipated subject to termination upon the defendant's death or plaintiff's remarriage; the Court finds that the award of alimony as aforesaid is the basis of awarding the plaintiff a lesser share of the estate which it would have awarded if there had been a division of estate in lieu of alimony but further finds that her alimony should not necessarily be terminated if she obtains full-time employment; that the plaintiff is encouraged to obtain employment if at all possible so as not to depreciate her opportunities."

said Mrs. Johnson "is encouraged to obtain employment *if at all possible.*" Yet clearly the amount of alimony awarded and the property settlement are such that Mrs. Johnson cannot be self-supporting when the alimony stops unless she is employed full-time at that time.

On the basis of the findings of fact, the reasoning of the judge, and a record which is silent as to the wife's earning capabilities, I would find that the grant of limited alimony is not supported by an adequate record. In this case the wife's future earnings and her earning capacity are completely unsubstantiated and an award of limited alimony is an abuse of discretion.[8]

We are in an era of great social change. In 1977 many wives and mothers are employed outside the home. Indeed in 1977 the United States Department of Labor reported that women make up more than 50 percent of the labor force of the country. Nevertheless, there are many women in Wisconsin who, like the wife here, have not been expected to work and have not worked, for compensation outside the home. The wife has devoted her full-time efforts and attention to promoting the interests of her spouse, caring for the home and tending the minor children. This woman's full-time career has been as a homemaker, and the trial judge found that she had made a "substantial investment in this marriage." Inside the home the homemaker may have worked more than forty hours a week at less than the minimum wage. Yet outside the home the skills are not marketable.

Alimony is not inconsistent with the current concepts of equality of men and women. Although many women are as well educated and trained in the trades, professions and business world as their male counterparts, not all women have had the benefits of such education or

[8] *Compare* this case with *In re Marriage of Rosen*, 101 Cal. Rptr. 295, 24 C.A.3d 885, 895 (1972) and *Friedlander v. Friedlander*, 80 Wash.2d 293, 494 P.2d 208 (1972).

training. We cannot proceed in a divorce case on the assumption of "legal equality of employment" beyond the extent to which it appears that such an assumption is justified in the particular case, that is, the individual woman in the case at bar has attained access or can obtain access to the job market to be self-supporting. Equality of men and women means eliminating sex stereotypes and looking at the individual. Just as it is unacceptable for the law to force all women into the mold of homemaker, it is similarly unacceptable to treat all women upon divorce as *per se* self-sufficient breadwinners in an open, full-employment job market.

It is desirable and necessary to encourage the recipient spouse to become equipped and trained for return to the job market. Alimony is unreliable. The paying spouse may lose employment, become ill, die, or avoid payment. Alimony can be harmful psychologically and economically to both parties. The paying spouse should not be destroyed by what some view as the devastating economic and psychological pressures of paying alimony. Too many recipients of alimony have been left in the degrading position of having to hound a former spouse for alimony. The problem of the impoverished elderly woman has often had its beginnings in a divorce decree.

Limited term alimony will in many cases be a highly desirable resolution of the problems presented in divorce cases. However, because of the finality of the limited alimony decree, it is particularly important that the trial court exercise great care to see to it that the assumptions concerning the recipient spouse's future earning capacity which underlie such a decree are realistic. Complete knowledge will obviously be unattainable; economic conditions are always subject to change, and even the best-informed objective assessment of the income-producing prospects of a particular formerly-dependent spouse may not correspond to her actual performance. However, the fact that the inquiry must be made in terms of reasonable

probabilities does not excuse the requirement that the inquiry be made.

In my opinion the trial court in the instant case did not give adequate consideration to the realistic probabilities of Mrs. Johnson's employment opportunities and earning potential during the next six years and at the time when the limited alimony payments will terminate. Nor did it have before it a sufficient record to enable adequate consideration to be given. I am therefore unable to say whether or not this was an appropriate case for limited alimony. I would reverse that part of the judgment providing alimony for a limited time and remand the matter to the trial court for the taking of additional evidence and for redetermination by the trial court in light of the considerations set forth in this opinion. Because the trial judge considered the alimony award and division of the estate to be closely related, I would reverse the judgment on the division of the estate also.

### III.

I would also reverse the judgment as to payment for the disputed prosthesis and remand that issue for additional evidence. I would have the trial court consider the wishes of the child involved; the views of a twelve-year old as to her prosthesis are, to my mind, worthy of careful attention. Under any circumstances, Dr. Johnson should contribute an amount equal to the cost of one prosthesis or other. He should not be relieved of all financial responsibility for a prosthesis.

I am authorized to state that Mr. Justice ROBERT HANSEN and Mr. Justice DAY join in this dissent.